JAMES LEONARD

*v.*

FRANK T. KINNARE, Admr.

*Opinion filed October 24, 1898.*

1. APPEALS AND ERRORS—*Supreme Court does not weigh evidence in determining propriety of refusal of peremptory instruction.* In determining the propriety of the trial court's refusal of defendant's peremptory instruction, the question is whether the evidence, with all reasonable inferences which the jury might draw therefrom, is sufficient to support a verdict for the plaintiff.

2. MASTER AND SERVANT—*master must use reasonable care to provide safe appliances for servant.* The master must use ordinary care in providing reasonably safe appliances for the use of his servant.

3. SAME—*master cannot shift responsibility for unsafe appliances on other parties.* The master's duty to exercise reasonable care in providing appliances for his servants is a positive obligation, and he is liable for failure to discharge that duty, whether he undertakes its performance personally or through other persons.

4. SAME—*servant may assume that appliance is reasonably safe.* A servant, while bound to take notice of patent defects in an appliance, is not required to make an examination for latent ones, and may properly act on the presumption that the master has used ordinary care to make the appliance reasonably safe.

*Leonard v. Kinnare,* 75 Ill. App. 145, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

WALKER & EDDY, for appellant.

JAMES MAHER, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action brought by Frank T. Kinnare, administrator of the estate of Michael Weir, deceased, against James Leonard, to recover for an injury received by Weir while in the employ of the defendant, resulting in his death.

The declaration alleged that on the 14th day of October, 1895, defendant was engaged in the erection of a large iron smoke-stack at the Reaper block, in the city of Chicago; that Michael Weir, deceased, was a minor of tender years, in the employ of the defendant at that place; that defendant then and there erected and operated a certain hoisting apparatus or tackle, composed of certain ropes and pulleys and other attachments and appurtenances, in close proximity to the said iron shaft or smoke-stack; that defendant "then and there, carelessly, negligently, wrongfully and improperly so placed, attached, adjusted and operated the said hoisting apparatus or tackle, together with the ropes and tackle and appliances thereof, in such a manner as to permit the said hoisting apparatus or tackle to come in contact with and be caught and entangled with a certain heavy iron shutter on or about one of the windows of said Reaper block, said shutter then and there being over and above the place where said Michael Weir, deceased, was then and there rightfully working, and whilst he was using due care and diligence about his own safety, and the said iron shutter was then and there, by means of the premises aforesaid, then and there pulled and detached or precipitated down to and upon the head and body of Weir, causing his death."

The defendant pleaded the general issue, and on a trial before a jury plaintiff recovered a verdict for $1200, upon which the court entered judgment. The defendant ap-

pealed to the Appellate Court, where the judgment was affirmed. To reverse the judgment of the Appellate Court the defendant has appealed to this court, and in the argument relies upon but one error to reverse the judgment, viz., that the trial court erred in refusing to instruct the jury to find for the defendant.

The Appellate Court, in its opinion, states the facts as they appear from the evidence, and upon examination of the record they will be found to be substantially correct. They are as follows:

"On October 14, 1895, appellant, a contractor, was erecting a smoke-stack made of sheet iron, about five feet in diameter, against the south wall of the Reaper block, in Chicago,—a building of eight stories in height,—and between two tiers of windows. The stack was being put up in sections, which were brought from the shop, hoisted up by a rope and tackle, and then riveted together. Two men, Kennedy and Graney, were riveting, and Weir was their helper, heating rivets,—all employees of appellant. Weir was nineteen years and eleven months of age. The building was not occupied, but was undergoing repairs, a Mr. Illsly being the contractor for the repairs, but he and his men had nothing to do with appellant or his employees. There were many windows on the south wall of the Reaper block, and these windows were protected by large double iron shutters swinging on hinges. A shutter, when opened straight out from the wall of the building, extended two feet nine inches from the wall, and it was the falling of one of these shutters which killed deceased. In order to raise the sections of the smoke-stack and put them in place, appellant had rigged a hoisting tackle. A piece of heavy timber had been placed on the roof of the building. It projected over the roof about twenty-two inches. From the end of this timber a rope and tackle hung. This dropped down so that it came about over the center of the smoke-stack. The rope and tackle dropped down about between two rows of windows, and was eighteen

to twenty inches from the wall. On the day of the accident four of appellant's men, including deceased, were working at the stack. The foreman, a man by the name of Gow, was inside the stack, in a position where he could not see what was going on outside, and he had nothing to do with what the deceased and the other two men were doing at the time of the accident. He had given them no orders or directions regarding the particular work they were doing, and that which they were doing they were doing in their own way, according to their own methods. The block and tackle had been put up under the directions of Gow, the foreman of appellant. At the time of the accident the top of the smoke-stack was about thirty feet from the ground. It was up to the third story of the building. Weir, the deceased, was standing inside, leaning over the top, his body projecting above the top of the stack about from his waist,—in other words, his legs were inside the stack while his body was up above the top. Kennedy and Graney, the other two employees of appellant, were down below on the ground, and they were hoisting a 'dolly-bar,' which is a big hammer with a long handle, to hold against rivets when the men were riveting. They had fastened the dolly-bar to the rope, which extended below the lowest block of the double block and tackle, and both men were hoisting away without glancing upwards. At the same time Weir, the deceased, was leaning over the top of the stack, either looking to catch the hammer or helping the men below. Kennedy says Weir was pulling on the same rope with them. The day was windy, and the shutter that fell off was open and extended out from the wall, and was about thirty feet above Weir. Owing to the lightness of the dolly-bar being lifted and the wind, the ropes were flapping, and so was the shutter. The flapping rope caught and jerked the corner of the shutter, knocking it down. The knot in the rope or the block caught the shutter and lifted it off its hinges, letting it down. It fell and struck deceased."

There was also evidence that the shutters had been repeatedly fastened. It also appeared from the evidence that when the shutters were open they projected at least one foot beyond the beam upon which the tackle was fastened. The deceased had nothing to do with the con-struction of the block and tackle. Gow, who was fore-man, had charge of the work for the defendant, and the block and tackle had been put up under his direction.

In a case of this character it is not the province of this court to pass upon the weight of the evidence. Where, however, the court has refused to instruct the jury, as was the case here, to find for the defendant, the question for determination is whether the evidence, with all the inferences the jury might properly draw from it, was in-sufficient to support the verdict. We have given the evi-dence a careful consideration, and do not think the court would have been justified in taking the case from the jury by an instruction to find for the defendant. The law is well settled that the master is bound to exercise reason-able and ordinary care and diligence in providing safe machinery and appliances for the use of those who are employed in his service. (*Monmouth Mining and Manf. Co.* v. *Erling*, 148 Ill. 521.) Here the charge of negligence was that the defendant constructed a hoisting apparatus, or rope and tackle, in such manner that it came in contact and became entangled with a heavy iron shutter, which was over and above the place where the deceased was rightfully working in the service of the defendant, and while the deceased was in the exercise of due care the iron shutter was thrown down and upon the deceased, producing his death. As has been seen from the evidence, the iron shutters, when opened, projected much further from the side of the building than the tackle, so that it necessarily followed that the shutters, when opened, would come in contact with the tackle. Under such cir-cumstances we think it is apparent that the jury were justified in finding, from the evidence, that the placing

of the beam and tackle in the manner in which they were placed was negligence, and likely to result in injury to those employed as was the deceased. As has been seen, it was the duty of the defendant to use reasonable care and diligence in providing appliances where the deceased was required to labor, and while the deceased was bound to take notice of defects which were patent, he was not required to make an examination for defects, and he might properly act on the presumption that the master had used reasonable care in placing the tackle for his work so as to make it reasonably safe. (*Hines Lumber Co.* v. *Ligas*, 172 Ill. 315.) It nowhere appears that the deceased had any knowledge of the defective or dangerous construction of the tackle.

It is, however, said that the deceased and the two men using and operating the tackle at the same time were fellow-servants. Conceding that the deceased and those with whom he was working at the time of the injury were fellow-servants, including Gow, who had charge of erecting the tackle, that has no bearing on the case. Here the injury resulting in the death of the deceased did not arise from any negligent act of the men in operating the rope and tackle at the time the deceased was struck and killed by the falling shutter, but the negligence relied upon was that the block and tackle were not properly constructed by the defendant's foreman. The duty of the master to exercise reasonable care in providing safe instrumentalities where servants are required to work is a positive obligation towards the servant, and the master is liable for any failure to discharge that duty, whether he undertakes that performance personally or through another servant. *Hess* v. *Rosenthal,* 160 Ill. 621; *Chicago, Burlington and Quincy Railroad Co.* v. *Avery,* 109 id. 314; *Chicago and Alton Railroad Co.* v. *Scanlan,* 170 id. 106.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*