Brookside Coal Mining Co. v. Dolph.

---

## Brookside Coal Mining Co. v. John R. Dolph, by His Next Friend.

101    169
p101    174

1. CORPORATIONS—*Duties, When Engaged in Dangerous Operations.* —A corporation engaged in a dangerous business is charged with the duty, not only of furnishing reasonably safe appliances for its employes to use, but also of correcting a habitual abuse or non-use of such appliances, or of discharging the offending employe.

101    169
114    ²575

2. COAL MINING COMPANIES—*Habitual Violation of Rules by Employes.*—Where the officers of a mining company charged with the duty of enforcing a rule adopted for the safety of employees know that such rule is habitually violated, and by reason of such violation an employe is injured, the company can not shield itself from liability under the fellow-servant rule.

3. SAME—*Liability for a Failure to Comply with the Statute Requiring Places of Refuge.*—For an injury to a person occasioned by the willful failure to comply with the statute (Hurd's R. S. 1901, p. 1216, Sec. 21) in regard to places of refuge in coal mines, a right of action for damages is given to the person injured.

4.  Same—*What is a Willful Violation of the Statute.*—By a willful violation of the statute requiring places of refuge in coal mines is meant a deliberate violation, knowingly suffered.

**Trespass on the Case,** for personal injuries.  Appeal from the Circuit Court of Vermilion County; the Hon. Ferdinand Bookwalter, Judge, presiding.  Heard in this court at the November term, 1901.  Affirmed. Opinion filed April 9, 1902.

D. D. Evans and G. M. McDowell, attorneys for appellant.

Penwell & Lindley and Wood & Elmer, attorneys for appellee.

Mr. Justice Harker delivered the opinion of the court.

This is an appeal from a judgment of $3,500 recovered by appellee for injuries sustained by him while working in appellant's coal mine.

Appellant operates its mine and removes coal therefrom by means of cars running on an incline, which extends from the surface of the ground to where the coal is mined.   The incline is equipped with a double track and endless cable, by means of which loaded cars are drawn up one track and empty ones let down the other.   The power to move the cable is furnished by an engine located on the surface, and the cars are attached to the cable by means of a grip, operated by an employe called a gripper.

At the time of the injury complained of, there was a large pillar of unmined coal at the bottom of the incline, some 560 feet from the mouth.   At that point the tracks separated, so that the empty cars would go to the right of the pillar and, after going around it, return on the other track, loaded.   The slope of the incline from the mouth, at the surface, to the pillar, was about six inches to every ten feet.

Appellee, a boy between fifteen and sixteen years of age, was stationed at the bottom of the incline, charged with the duty of preventing a train of loaded cars from starting up the incline until the train preceding it had passed out, and of spragging the empty cars as they came down on the other track.   At the time of the accident, a train of empty cars,

for some reason, became detached from the cable at the mouth, and at about the same time a train of loaded cars on the other track became likewise detached. Both trains started down the incline at nearly the same instant. Appellee, hearing the train of empties coming, and fearing it would jump the track at the curve and run over him, got on the other track before he discovered the train of loaded cars coming. As soon as he discovered that, he ran for the nearest place of refuge, a man-hole over a hundred feet distant, but before reaching it he was run over and sustained injuries which necessitated the amputation of his right foot.

In his declaration appellee charged that appellant failed to furnish him with a reasonably safe place to work, that the cable was defective, that appellant failed to provide drags to prevent loaded cars from running down the incline in case they should become detached from the cable, and that it willfully failed to provide places of refuge in the side walls along the incline as required by statute.

In seeking a reversal of the judgment, the chief contention urged is that the verdict was against the evidence. Some complaint is made of remarks of the trial judge in the presence of the jury and of rulings upon the evidence, but as we are unable to see anything substantially erroneous or harmful upon that line, we shall confine ourselves in this opinion to appellant's main contention. While it does not clearly appear what caused the train of empty cars to become detached from the cable, we are justified under the evidence in saying that the other train became detached because a misplaced crowd roller caused the grip to loosen from the cable, and the "gripper" was unable to make it take hold again on account of the cable being of different sizes. Had drags been attached to the rear car when it left the bottom, they would have prevented the descent of the train, even after becoming detached from the cable. Appellant introduced proof to show that it furnished drags and that employes were instructed to use them; that it was the duty of an employe at the mouth to put them into an empty car when descending, and that they were to be

attached to the rear car of a loaded train when ascending. Wherefore it is insisted that if it be claimed that the injury was due to a failure to attach drags, the negligence was that of a fellow-servant of appellee. It is in evidence that drags were used but little, if at all. Men who had worked in the mines for months testified that none had ever been used or furnished while they were working. Whether any were furnished or not—and upon that point there is a conflict, it is clear that they were not used to any considerable extent, and that fact must have been known to appellant's officers in charge of the mine. Where the officers of a corporation charged with the duty of enforcing a rule adopted for the safety of employes, know that it is habitually violated, and by reason of such violation an employe is injured, the corporation can not shield itself from liability under the fellow-servant rule. A corporation engaged in a dangerous business is charged with the duty not only of furnishing reasonably safe appliances for its employes to use, but also of correcting an habitual abuse or non-use of such appliances, or of discharging the offending employe. C. & N. W. R. R. Co. v. Swett, 45 Ill. 202; Monmouth Mining and Manufacturing Co. v. Erling, 148 Ill. 521; I. C. R. R. Co. v. Jewell, 46 Ill. 99; Consolidated Coal Co. of St. Louis v. Haenni, 146 Ill. 614; Leonard v. Kinnare, 174 Ill. 532.

The cable was not of a uniform size. Some parts were new and some were old and badly worn. Had it been of uniform size and in proper condition, the gripper could have controlled the train. So we think appellant was guilty in two respects under the common law counts: one, in the failure to provide a proper cable, and the other in a failure to furnish and use drags on the rear car of loaded trains.

Section 21, Chapter 93, of Hurd's Revised Statutes provides:

"On all single track hauling roads, wherever hauling is done by machinery, and on all gravity or inclined planes, in mines, upon which the persons employed in the mine must travel on foot to and from their work, places of refuge must be cut in the side wall not less than three feet in depth and four feet wide, and not more than twenty yards

apart, unless there is a clear space of at least three feet between the side of the car and the side of the road, which space shall be deemed sufficient for the safe passage of men." * * *

For any injury to a person occasioned by the willful failure to comply with the provision, the statute gives a right of action for damages to the person injured. (Section 33, Chapter 93, Hurd's Statutes.) That statute is declared upon in some of the counts of the declaration, and the evidence is undisputed that there was not a space of three feet between the sides of the cars and the walls of the mine, nor were places of refuge cut in the side walls twenty yards apart. In fact, the nearest place of refuge was 114 feet from where appellee was working. It is insisted by appellant, that as this was a double track hauling road where the hauling was done by machinery, no duty rested upon it to provide places of refuge in the side wall. It is urged that where there is a double track, there is no necessity for places of refuge and that the legislature did not intend to require such places except on a single track road where machinery is used. The language of the section quoted admits of no such construction. As we read it, the duty of providing places of refuge is required on all inclined planes where coal cars are hauled, whether by machinery or mules, whether by single or double track. The wisdom of requiring it on a double track is demonstrated in this very case, where two trains at the same time broke loose from the cable at the top and came rushing down the incline abreast. The evidence shows a willful violation of the statute. The superintendent was frequently called upon to have the places cut for the protection of the miners by members of the mine committee, and once by the mine inspector. By a willful violation of a statutory requirement of this kind is meant a violation knowingly and deliberately. Catlett v. Young, 143 Ill. 74.

We see nothing in the record to justify the contention that appellee should not recover because he left a safe place and through fright or negligence jumped into a place of danger.

True, there was between the two tracks, at the point where they passed around the pillar of coal, a space of twelve or thirteen feet, but appellee knew that the train of empty cars coming rapidly down the incline was liable to jump the track on the curve and run over him. In the excitement of the moment, it was but natural that he should get on the other track, not knowing of the approach of the other train. When he discovered that there were two trains coming, he did a very natural thing—started for a place of refuge 114 feet away.

We see no good reason why the judgment below should be disturbed and the same will be affirmed.