## Allen B. Wrisley Co. v. William Burke.

1. MASTER AND SERVANT—*Knowledge of Foreman is Knowledge of the Master.*—It is the master's duty to exercise reasonable care to furnish the servant a reasonably safe place in which to do his work. This he has failed to do when his foreman, who in this case was a vice-principal, knew of the dangerous condition of the place for a week before the accident. His knowledge is chargeable to the master.

2. SAME—*Assumption of Risk and Exercise of Proper Care, Questions for the Jury.*—Whether plaintiff assumed the risk or failed to exercise proper care, are questions properly submitted to the jury.

3. SAME—*Duty to Furnish a Reasonably Safe Place in Which to Work Can Not Be Delegated.*—The master's duty to exercise reasonable care to furnish the servant a reasonably safe place in which to work, can not be delegated to another so as to divest the master of that duty. Whoever performed that duty for the master, whether he was or was not the servant's fellow-servant, his negligence would be the master's negligence.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RUSSELL P. GOODWIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed February 9, 1903.

**Statement.**—Appellee brought suit against appellant to recover damages for personal injuries sustained by him while in its employ June 24, 1896, and on a jury trial was awarded a verdict of $7,500, on which the court entered judgment, from which this appeal is taken.

At the close of the plaintiff's evidence and again at the close of all the evidence, defendant moved the court to instruct the jury to find it not guilty, but the motions were respectively overruled. With another instruction for the plaintiff the court gave the following, which we have numbered consecutively two to five:

2. "The court further instructs the jury that if you should find from the evidence that the defendant did not have actual notice of a defect in the sewer cover described in the declaration, yet, if you find from the evidence that the cover to said sewer hole was in a defective condition and remained so for such a length of time, prior to the accident to the plaintiff, that the defendant might have discovered such defect by the exercise of reasonable diligence, then you will be justified in finding that the defendant had notice of such defect, and that it was the duty of the defendant to have repaired said defect."

3. "The court further instructs the jury that it was the duty of the defendant in this case to have used ordinary care and prudence in furnishing to the plaintiff at the time of the accident a reasonably safe place in which to work, and to have used all reasonable precaution to maintain and keep such place in a reasonably safe condition."

4. "The court further instructs the jury that while it is the law that where an employment is attended with danger, the servant engaging in it assumes the measure of ordinary perils which are incident to it; this applies only to perils or risks ordinarily incident to the service and not to those which are extraordinary and which did not exist at the time the servant engaged in the master's business and which the servant did not subsequently assume."

5. "The court further instructs the jury that if, under the evidence and instructions of the court, the jury find the defendant guilty, then in estimating the plaintiff's damages it will be proper for the jury to consider the effect of the injury in future upon the plaintiff, if any is shown by the evidence in this case, the use of his foot and leg, his ability to attend to his affairs generally, in pursuing any ordinary trade or calling, if the evidence show that these

will be affected in future, and also the bodily pain and suffering he sustained, if any, and all damages, present and future, if any, which, from the evidence, can be treated as the necessary and direct result of the injury complained of."

The court gave numerous instructions on behalf of the defendant, but refused, among others, the following:

V.   " The court instructs the jury that in order to entitle the plaintiff to recover any damages, under the allegations of the declaration, in this case, he must prove by a preponderance of the evidence:

First.   That the manhole and the cover thereof were in a defective condition at the time of the accident.

Second.   That the officers of the defendant had notice or knowledge of the defective condition of said manhole, if the jury believe the same was defective; and

Third.   That the plaintiff did not know of such defect and had no equal means with the master of knowing the same.

And the court instructs the jury in this connection that in determining the weight or preponderance of the evidence in this case and in whose favor it lies, they must take into consideration the opportunities of the several witnesses for seeing and knowing the facts and things about which they testify, their conduct and demeanor while giving their evidence, their interest or lack of interest, if any, in the suit and the result thereof, the relation or connection, if any, between the witnesses and the parties to the suit, the apparent consistency and fairness of their evidence, the probability or improbability of the truth of the statements of the several witnesses testifying therein in view of all the facts and circumstances proven on the trial thereof, and from all the facts and circumstances determine upon which side the weight or preponderance of the evidence is.

And the court further instructs the jury that in determining in whose favor, whether that of the plaintiff or the defendant, the weight of the evidence preponderates or lies, the jury must take into consideration all the evidence in the case and can not willfully and capriciously disregard the evidence of any unimpeached witnesses testifying either for the defendant or the plaintiff in the case."

VI.   " The court further instructs the jury that it is the law of this state, that the defendant was under no obligation to take more care of the plaintiff than the plaintiff might reasonably be expected to take of himself.   Therefore, although the jury may believe from the evidence that

Allen B. Wrisley Co. v. Burke.

the covering to the manhole, in which the plaintiff fell and was injured, was partially raised or removed or gave way when he stepped upon or near the same, and that his foot was scalded thereby in the manner testified to by him, still if the jury shall further believe from the evidence that the plaintiff had been at work in the boiler room of the defendant and in and around said manhole and in the use of the same in the course of his employment for such a length of time and to such an extent as to enable him to ascertain the purpose and use of said manhole and that the covering thereof was defective and dangerous to such an extent as to enable him to become acquainted with the risk attending the use of said manhole in the course of his employment, and if the jury shall further believe from the evidence that the opportunity of the plaintiff to become acquainted with the condition and cover of said manhole, and the risk attending the use thereof, was the same as that of the defendant or the agents and officers thereof, then the plaintiff, in not ascertaining the condition of said manhole and the danger and risk attending the use of the same, if the jury believe from the evidence that he did not know its condition and the risk attending its use, and was not in the exercise of ordinary care, and the jury must find the defendant not guilty."

XII. "The court further instructs the jury that although they may believe from the evidence that the plaintiff was injured by stepping into the manhole, or through the cover thereof, in the boiler room of the defendant, and that said injury resulted from a defective condition of said manhole, still, if the jury shall further believe from the evidence that the plaintiff was at work in and around the boiler room of the defendant from the 4th day of June until the 24th day of that month, and that in his employment he was daily or oftener required to remove the cover of said manhole for the purpose of siphoning out the water from under the boilers in said boiler room, then he will be charged with notice of the condition of said manhole and the covering thereof; and the jury are further instructed that if the plaintiff continued in the employment of the defendant after such knowledge he voluntarily assumed the danger and risk attending his employment, and the jury must find the defendant not guilty."

D. J. & D. J. SCHUYLER, JR., attorneys for appellant; D. J. SCHUYLER, of counsel.

HENRY M. COBURN, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

The evidence, in substance, among other things not necessary to be here stated, shows that plaintiff was employed by one Lockwood, an engineer and foreman of defendant, two or three weeks prior to his injury, which occurred on June 24, 1896, to work in the boiler room of defendant's soap factory, in a basement of a building on Fifth avenue, in Chicago; that his duties were to take ashes out of the ash pits from underneath the boilers, assist the firemen, do what he was told to do by the foreman, and at times he was directed to and did siphon, by means of a hose, water which collected in the ash pits, into the catch basin of a sewer located in a boiler room and near the ash pits, and he was instructed how to do this siphoning; that the catch basin, which was about thirty-six inches in diameter, had a wooden cover made of two pieces of inch and one eighth pine boards crossed, and had a hole in the center about twelve inches square which was used for cleaning out the catch basin; that this twelve-inch hole had a separate cover made of two boards, the lower one, which fitted into the hole, twelve, and the other fourteen inches square, nailed together; that the boiler room was about fifteen feet wide and forty feet long, excluding the space taken up by the boilers, contained six boilers with four ash pits, and was lighted by five windows facing an alley to the east, the windows being about three feet wide and between seven and eight feet high, also by three gas jets. As to whether the place where the catch basin was located was usually well lighted or otherwise, there is a conflict in the evidence. At the time of the accident and during most of the time the plaintiff worked in the boiler room, we think the preponderance of the evidence shows that the place where the catch basin was the light was poor—not sufficient to see the condition of the catch basin cover, without a careful examination. It appears that it was daily or oftener necessary to siphon the water from the ash pits into this catch basin, and in order to do so the lid or covering over the hole in the center of the basin

cover had to be removed, a hose placed, one end in the ash pit and the other in the catch basin, by means of which the water was taken from the ash pit into the catch basin and thence ran away through the sewer.   The water in the ash pits was hot and steam escaped into the catch basin, keeping the water therein always hot, so that the cover of the catch basin became water and steam soaked, and it became soft and disintegrated by the steam, and a new cover had to be put on every four to six weeks; but this softening of the catch basin cover was not known to plaintiff, and it does not appear that he had any experience or knowledge in that regard.   The catch basin cover was on a level with the boiler room floor, and plaintiff's duties in removing the ashes and siphoning the water from the pits into the catch basin made it necessary for him to pass from time to time, many times daily, very near the catch basin, and at the time in question, while going about his duties, he stepped upon the cover of the catch basin, which was enveloped by escaping steam at the time, and the part over the twelve-inch opening gave way and plaintiff's foot and leg passed through the opening into the hot water in the basin, whereby his right ankle and leg almost to the knee were scalded.   The evidence tends to show, and the jury were justified in finding, that the catch basin cover had been in a dangerous condition for a week at least before the accident, and that this was known to defendant's foreman, who had previously asked defendant's president to allow the wooden cover to be replaced by a stone cover with an iron plate on it.   Indeed, it is not contended but that the defendant was negligent as charged in the declaration.

For appellant it is claimed that the verdict is against the weight of the evidence, that the plaintiff assumed the risk of injury from the catch basin cover, that he was a fellow-servant with Lockwood, the defendant's engineer and foreman, and that he failed to exercise ordinary care, which was the proximate cause of his injury.   It seems unnecessary to state the specific items of evidence bearing upon each of these points.   We have read and considered it in

the light of the argument of appellant's counsel, and are of opinion that the evidence on the question of plaintiff's care and the assumption of the risk, present matters for the consideration of the jury, and that a verdict on both these points in favor of the plaintiff is justified. It was the defendant's duty to exercise reasonable care to furnish the plaintiff a reasonably safe place in which to do his work. This, we think, it failed to do, because, as we have seen, Lockwood, whom the evidence shows was the defendant's foreman, and, for the purposes of this case, a vice-principal, knew of the dangerous condition of the catch basin for a week before the injury. This knowledge was chargeable to the defendant. Swift & Co. v. Rutkowski, 167 Ill. 156–9; City of La Salle v. Kostka, 190 Ill. 130–41; Ross v. Shanley, 185 Ill. 390.

Appellant's counsel argue with great earnestness that the plaintiff is shown by the evidence to have had equal knowledge, or at least equal means of knowledge, with Lockwood, of the dangerous condition of the catch basin. That he had actual knowledge is denied by the plaintiff, and the evidence as to the want of proper light in the boiler room and the nature of plaintiff's duties, we think, tends to corroborate him in this respect. It was not his duty to make a critical examination of the catch basin cover (City of La Salle v. Kostka, 190 Ill. 130, and Ross v. Shanley, 185 Ill. 390–3, and cases cited), and the evidence tends to show that without such examination he would not have discovered that it was dangerous. He did not make a critical examination of the cover. The fact that he took off the covering at times is not conclusive, considering the character of the light in the room and the nature of his duties, that he knew or by the exercise of reasonable care should have known that the covering was in a dangerous condition.

Whether plaintiff assumed the risk or failed to exercise proper care, were, we think, questions properly submitted to the jury, and the verdict on these points should not be disturbed.

As to the claim that Lockwood was his fellow-servant, there is no sufficient evidence to support it, and the court was right in refusing the instruction on the question of fellow-servant, numbered 23, which it is claimed the court erred in refusing. Even if Lockwood was a fellow-servant of plaintiff, that fact would not relieve appellant from liability. Appellant's duty to exercise reasonable care to furnish appellee a reasonably safe place in which to work could not be delegated to another so as to divest itself of that duty. Whoever performed that duty for appellant, whether he was or not plaintiff's fellow-servant, his negligence would be appellant's negligence. R. R. Co. v. Scanlan, 170 Ill. 106–14, and cases cited; Leonard v. Kinnare, 174 Ill. 532–7.

Appellant's counsel contend that the court erred in its rulings upon evidence and in this connection it is said that there was error in allowing plaintiff to prove by Dr. Eaton, the attending physician of plaintiff, what his services as such " were reasonably worth," the contention being that the proof should have been, not what the services were reasonably worth, but what the usual, ordinary and reasonable charges among physicians in the city of Chicago were for services rendered by the witness. According to the abstract, the objection of counsel was general—not as they now make it. The case of Ry. Co. v. Cotton, 140 Ill. 486, relied upon by appellant in this regard, does not sustain the claim. It was certainly competent to prove what the services were reasonably worth, and if the objection of counsel now made is good, he should have moved to strike out the evidence when the plaintiff failed to prove what the usual and ordinary charges for such services among physicians in Chicago were. No such motion was made. Like evidence as to services of the nurse who attended plaintiff was objected to, but the objection was general and the same reason applies. The evidence was proper when offered, and no motion was made to strike it out.

Also it is claimed it was error that the witness Hussey was not allowed to answer the following question, asked on his direct examination by defendant's counsel:

";Q. Now when you was there—during the time you was there, what did you see Burke doing? What were the ordinary duties he performed there while he was working for Mr. Wrisley up to the time of the accident?."

We think there was no error in this regard. The question is double, and besides, the witness had previously answered as to what the plaintiff, Burke, did, and that siphoning out the water was a part of his duties, and that he had seen him do it. We are unable to conceive how anything further which was material could have been elicited by an answer to the question.

Another objection is made to the court's ruling in striking out certain evidence of appellant's witness Kaiser, but we think there was no error in the ruling. The same reasons as last above stated apply.

It is also claimed that the court erred in permitting certain questions on the cross-examination of Dr. Hoether, one of appellant's witnesses, which elicited testimony from the witness that he was paid for his services in examining plaintiff by an accident insurance company, and that he had since examined seven or eight cases for the same company. The witness had previously answered that a Mr. Bale had sent him to examine plaintiff; that he thought Mr. Bale was connected with appellant, but didn't know. In view of the witness' answer, we are not prepared to hold that the further examination, which was allowed and to which we have referred, was such error as would justify a reversal. It may be said the further examination was proper for the purpose of showing the witness' interest and as bearing upon his credibility, considering the fact that he testified with great particularity of matters which occurred nearly five years before he testified. Also, this evidence could have had, in our opinion, no prejudicial effect, except as to the amount of the damages assessed. We think the verdict was not so far excessive as that it should be disturbed.

Criticism is made of each of the plaintiff's instructions, quoted in the statement, but we are of opinion that they present no cause of reversal. The one numbered three, in

Allen B. Wrisley Co. v. Burke.

the last clause, in stating the defendant's duty, says that it should have used all reasonable precaution to maintain and keep the place where plaintiff was put to work in a reasonably safe condition. It is said that this imposes a higher duty upon the defendant than is required by law, viz., to exercise the highest degree of care to keep the sewer cover in a safe condition. We think not, but only that it should use reasonable precaution so to do. *All* reasonable precaution, while a somewhat stronger expression, means no more than reasonable precaution.

The instruction numbered 5 is criticised as being misleading and vicious because its tendency was to cause the jury, because of the phrase, "all damages present and future," to award higher damages than it otherwise would. We think the objection is not justifiable. It only allows the jury to award damages in this connection for bodily pain and suffering in the future, as is stated in the instruction, "which, from the evidence, can be treated as the necessary and direct result of the injury complained of." Such is the law as established by repeated decisions of this and the Supreme Court.

Objections to the other of the plaintiff's instructions need no specific mention.

The defendant's fifth instruction was, as we think, properly refused, for, among other reasons, that in the second item of proof required thereby to entitle plaintiff to recover, it makes it necessary for the plaintiff to prove that the defendant had notice or knowledge of the defective condition of the manhole of the sewer or catch basin in question. There was no claim on the part of the plaintiff that the manhole was in a defective condition. Besides, it required the plaintiff to show notice or knowledge of the defendant in this regard, whereas it is sufficient that the defect had existed for such a length of time that the defendant should, by the exercise of ordinary care, have known of its defective condition.

The sixth refused instruction requested by the defendant was properly refused, among other reasons, because it is

argumentative, and in effect tells the jury that certain facts constitute a want of ordinary care on the part of plaintiff, which should have been left to the jury.

The twelfth refused instruction requested by the defendant was properly refused, for the reason that it is in substance covered by the twentieth, which was given, and also has the same objection as the fifth, in that it predicates plaintiff's injury upon the defective condition of the manhole, which was not claimed.

Appellant's counsel also argue that it was error for the court to refuse the sixteenth instruction requested for appellant. The abstract and the record both show that this instruction was given.

From a careful reading of all the instructions given and refused, we think that the jury was instructed quite fully upon all the issues of the case, and in some respects more favorably for appellant than was its right under the law, and therefore no just ground of complaint in this regard can be made by appellant.

Finally it is argued that the damages awarded are grossly excessive, and that the jury was actuated by passion and prejudice in rendering the verdict it did. We are unable, from a careful reading of the evidence, to find anything which seems to indicate either passion or prejudice of the jury. In fact, the trial seems to have been conducted in a fair and orderly manner. The evidence shows that the plaintiff suffered very serious and painful injuries, which are plainly permanent in their nature, and we think it is our duty not to disturb the judgment. It is therefore affirmed.