Luke Nevin, Plaintiff in Error, v. William Grace Com-
pany, Defendant in Error.

Gen. No. 15,829.

1. Appeals and errors—*when assignment waived.* An assign-
ment of error not argued is waived.

2. °Master and servant—*when doctrine of fellow-servant bars
recovery.* If the injury result from a defective board in a scaffold
a recovery will not be allowed if the selection of boards for such
scaffold was a detail of the work of the plaintiff and his fellow-
servants—the construction of scaffolds being a work voluntarily
assumed by the gang with which the plaintiff was associated as a
privilege for their own protection and pursuant to an existing
custom.

Action in case for personal injuries. Error to the Superior Court
of Cook county; the Hon. Willard M. McEwen, Judge, presiding.
Heard in this court at the October term, 1909. Affirmed. Opinion
filed November 2, 1911.

Jacob C. Le Bosky, for plaintiff in error.

F. J. Canty, R. J. Folonie and J. C. M. Clow, for
defendant in error.

Mr. Presiding Justice Brown delivered the opinion
of the court.

This is a writ of error to the Superior Court of
Cook county to reverse a judgment of *nil capiat* and
for costs against the plaintiff.

The judgment was rendered on the verdict of a jury.
Errors are assigned and argued in this court on various
instructions given by the trial judge at the request of
the defendant and on his action in denying the motion
for a new trial, made on the ground that the verdict
was against the weight of the evidence.

The action was one for personal injuries to the
plaintiff caused by the alleged negligence of the de-
fendant corporation. The plaintiff was a structural
iron worker. At the time of the accident he was in the

employ of the defendant as one of a body or crew of like workers engaged in building for the defendant the steel structure of the present court house of Cook county. He was a riveter, and at the time of the accident was engaged in his work, sitting for that purpose on a scaffold constructed thus: From the floor girders of the eleventh floor were suspended by ropes two joists, called needle beams (four by sixes), each twenty-five feet long and running parallel to each other about ten feet apart. Three planks, each two inches thick, twelve inches wide and from twelve to fourteen feet long, were placed transversely across these needle beams at intervals of four or five feet. Transversely across these, and thus running in the same direction as the needle beams, were placed two other short planks. All these planks over the needle beams were laid loose and unfastened.

Besides the plaintiff there were four other men in the immediate riveting gang in which he was working, but only two were on the scaffold at the time. The one other than the plaintiff appears to have stepped from one of the upper short planks on to the plank on which Nevin was sitting, and it broke, precipitating both men in a fall which broke the plaintiff's ankle. He sued the defendant corporation, alleging in the first count of his declaration that the defendant employed the plaintiff and was "possessed of and caused to be used" divers scaffolding work, and ordered and directed the plaintiff to work thereon; that the defendant knew that the scaffolding work was weak and unsafe, or should have known it, and that the plaintiff did not know the same. The second count makes substantially the same charges, averring that it was the duty of the defendant to furnish the plaintiff a reasonably safe place to work, but that in violation of said duty the defendant "supplied and furnished to the plaintiff and caused him to use the scaffolding along and above the tenth floor of said building," which was made of such unsafe, unfit and weak material that the plaintiff, not

knowing (while the defendant did know) of said conditions, fell and was injured on account of the breaking of a board in said scaffolding.

To this declaration the defendant pleaded the general issue. The cause was submitted to a jury. After the case of the plaintiff was closed the defendant moved for a peremptory instruction in its favor. The motion was denied. The defendant offered no evidence. Five instructions were given to the jury at the request of plaintiff and twenty at the request of the defendant. Many of those tendered by the defendant and given are vigorously attacked by the plaintiff.

The plaintiff's counsel during the arguments and after the opening argument for the plaintiff and the argument for the defendant, tendered one further instruction, which the court refused, marking it "Received too late." Although this refusal is assigned for error, no argument is made on it, and it may be considered as waived.

The jury found a verdict of not guilty, and after a motion for a new trial had been made, argued and denied, the judgment which this writ of error seeks to reverse was rendered.

We do not think any good purpose would be served by taking up one by one the instructions that are complained of and criticising or approving them. The case is one which turns on broader principles than the mere phraseology of certain of the instructions which counsel for the plaintiff objects to.

The board which broke was defective for the purposes of a scaffold, in that it had a knot in it which the evidence would seem to show was hidden by a covering of mortar or cement which had hardened thereon.

Because of the undeniable general principle that a master must use reasonable care to furnish a reasonably safe place and reasonably safe appliances to his workmen, and, further, must use reasonable care in inspection from time to time to see that the place and appliances have not become unsafe, the plaintiff

charges this unsound board in the scaffold to the negligence of the master, and claims damages for his injury. When to that the defendant rejoins that it had nothing more to do with the selection and inspection of the material which went into the scaffold than that it was selected by the very gang of its employes of which the plaintiff was one, from a pile of boards incidentally lying in the building under construction, and that therefore it should not be charged with the unsoundness of the particular board that broke, which it neither selected nor inspected, save through the plaintiff's immediate fellow-servants, the plaintiff replies that under the law of Illinois, laid down in such cases as Leonard v. Kinnare, 174 Ill. 532, and Smith v. Schillinger, 225 Ill. 77, the duty of the master in selection and inspection cannot be so delegated as, by the "fellow-servant" or "common employment" doctrine, to relieve him from liability; that if it is delegated, the delegate who makes the selection and inspection becomes a vice principal, for whose acts or defaults the principal, whose primary and personal duty he has assumed, is liable. This also is undoubtedly the general rule. But to this there are exceptions.

It is not applicable where the preparation of the defective appliance by the fellow-servants and the selection of the material from which it is prepared are mere details of the work for which those servants are employed. In such a case the appliance is not furnished by the master, nor is the duty delegated. It is assumed spontaneously and voluntarily by the particular set or gang of workmen who, in the pursuance of their specialty in construction (as in the present case), or in other work, find it necessary to furnish themselves with the assistance of the temporary appliance.

Van Den Heuvel v. National Furnace Company, 84 Wis. 636, and the cases therein cited, illustrates this rule very well, and we deem it applicable to the case at bar.

Indeed there seems to be more than usual justifica-

tion for the application of the fellow-servant rule where, as in this case, the furnishing and construction of the appliance seems to be made by the particular class or gang of workmen a peculiar privilege or safeguard of their employment.

The preference and determination of the structural iron workers to furnish their own scaffolds and "permit no one else to build them" appears in the evidence. It adds force at least to the further evidence that in the case at bar it was the voluntary choice for a detail of their work on the part of a particular gang of workmen co-operating on a job immediately at hand, rather than the supply of an appliance by the employer, which resulted in the defective scaffold.

The attempt to disassociate the plaintiff from the riveting gang, so far as the construction and use of the scaffold is concerned, is not successful. It does not appear that he was present when the boards were selected by his co-workmen, but it does appear plainly enough that he had a hand in taking apart and putting together the loosely made scaffold several times. This raises, under the circumstances, a very serious question whether assumption of the risk in any event could not be attributed to him, independently of the other considerations that we have noted.

But as his duty was to observe and not to inspect, and the exact condition of the board is none too clearly indicated in the evidence, we do not place our decision on that ground.

We hold, however, that the evidence shows clearly that the defendant neither furnished nor constructed the scaffold, nor had a duty to do so, nor delegated any such supposed duty to a vice principal. It hired the plaintiff, with others, to work together in a certain limited field of the construction. These men voluntarily, and in accordance with a custom and rule which undoubtedly in the long run works well for them, choose to regard the construction of the swinging platforms on which they work as a detail of the work to

be left in their hands. Because they did not exercise sufficient care in the selection of boards incidentally within their reach, but not specifically furnished for that purpose, one of their immediate fellow-servants was hurt. We do not think, under the law of liability of employers for personal injuries, as it existed when this accident occurred and will exist for some time to come, until the Compensation Bill, so-called, of 1911, becomes effective, any other verdict than that returned by the jury in this case could, under the evidence, have been allowed to stand.

This being so, we must conclude that the issues in the case were rightly determined, and that the judgment should not be disturbed, even if there were erroneous propositions in some of the instructions abstractly and individually considered.

The judgment of the Superior Court therefore is affirmed.

*Affirmed.*