## Herman A. Yenne, Appellee, v. Centralia Coal Company, Appellant.

1. MASTER AND SERVANT—*duty to furnish appliances.* The master is bound to exercise reasonable care and diligence in providing safe machinery and appliances for those who are employed in his service.

2. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse where its contents are substantially contained in other instructions given.

3. TRIAL—*permitting jury to separate.* In the absence of prejudice appearing the action of the trial court in permitting the jury after being instructed to separate before entering upon their deliberations, will not reverse.

Action in case for personal injuries. Appeal from the Circuit Court of Marion county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911.

W. F. BUNDY and NOLEMAN & SMITH, for appellant.

WILLIAM G. MURPHEY and J. J. BUNDY, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

This was an action brought by the appellee against the appellant for an injury received while appellee was engaged in the hoisting of a smoke-stack. The case was tried by a jury and a verdict rendered in favor of the appellee for five hundred dollars, on which judgment was rendered and appellant brought the case to this court by appeal.

The declaration in the case alleges that on the eighth day of March, 1909, in the County of Marion, State of Illinois, that the defendant was operating a mine and was then and there removing or taking down a smoke-stack and that the defendant in the removal of said smoke-stack used a gin pole, held in place by three guy wires, and that said smoke-stack was being

raised by means of a pulley fastened, on the upper end of said gin pole, with a rope or wire attached thereto; that defendant and its authorized agents knew or ought to have known that in the process of raising said smoke-stack great weight, force and strain would be brought to bear upon each and every one of the said guy wires, so that unless the said guy wires were sound and of good condition and properly fastened, were liable to break; that one of the said guy wires then and there was not properly fastened and secured and was not sound and in good condition but on the other hand was rusted, rotted, weak and insecure and easily broken and loosened, all of which facts the defendant then and there knew or ought to have known but were unknown to plaintiff.

The declaration further avers that the defendant then and there carelessly and negligently commanded, ordered, directed and permitted plaintiff to work in and about said place, under the direction of defendant's authorized agent, while the guy wires were in an unsafe and dangerous condition, and that while plaintiff under direction of the defendant and its authorized agent was so working and laboring as aforesaid, one of the said guy wires broke and separated while the plaintiff in the exercise of ordinary care was engaged in taking down the said smoke-stack, and that by reason thereof the said gin pole fell upon plaintiff and then and there injured him; and he expended a large amount of money in and about being cured, and lost much time and wages in consequence thereof.

The first additional count alleges substantially the same facts and avers that it was the duty of the defendant to use reasonable care to provide reasonably safe tools and appliances and guy wires with which to take down said smoke-stack; but that the defendant carelessly and negligently used a defective gin pole and pulley and carelessly and negligently furnished guy wires which were too small to stand the great strain necessarily placed upon them in and about hand-

ling the said smoke-stack, and which were rusted, rotten and easily broken, all of which facts were known to the defendant and unknown to the plaintiff.

The facts set forth in the second additional count are substantially as the first except that it avers that one James Hoy, who was then superintendent of the defendant, was directing the conduct of said work in the lowering of the said smoke-stack.

The facts in the case, as appear from the evidence, are that the appellant had been engaged in the sinking of a shaft and that appellee had been at work, as a laborer, at the mine for about four months, doing such work as was necessary to be done in and about the mine, and during a portion of this time had charge of a gang of men and directed them in their work; that on the morning of March 8, 1909, the appellee, with his men, had been engaged at work in digging a ditch, tearing down the building, etc., and that it became necessary to take down the smoke-stack from off of the engine that had been used in the sinking of the mine; that Mr. Hoy, the superintendent, directed appellee to get a certain wire that was upon some reels and use that in the construction of the gin pole, and as appellee testifies, that he was told by Hoy to cut off three pieces, and these were the three pieces that were used on the gin pole; and Mr. Hoy himself says: "I told him three wires, guy wires, would hold it in the different directions."

It further appears from the evidence that the cable used consisted of six strands, and had been used as a signal wire by the defendant in the sinking of its mine; that the mine was wet and the cable liable to rust; that the gin pole was put in place and supported by these three guy wires and that the rope attached to the gin pole was fastened to the smoke-stack and when they attempted to raise it one of the wires parted and let the gin pole fall and injured plaintiff. It further appears from the evidence that the superintendent, Hoy, was well acquainted with the operation of these

gin poles, and that the appellee had no knowledge whatever of a gin pole or its construction or operation, and that he so told Hoy, the superintendent; that when the gin pole fell it struck appellee on the knee and injured his knee badly, on account of which he lost considerable time and expended considerable money in and about endeavoring to be cured.

It appears from the evidence of some of the witnesses that Hoy was giving the orders to the men while working around the gin pole, and in lowering the smoke-stack; this, however, was disputed by Hoy.

It is claimed, by counsel for appellant, that there was no proof of the negligence charged in the declaration, and that for that reason there could be no recovery in this case. The negligence charged in the several counts of the declaration is, that the appliances or wire furnished by the defendant for the construction of the gin pole was rotten, rusted, weak, easily broken and too small to withstand the strain. It may be true that no witness testified that the wire furnished was rotten or even rusted but the testimony does show that the wire had been used down in the mine in the sinking of it, as a signal wire, and that the mine was wet, and, as we think, the natural tendency of keeping the wire in the wet mine would be to rust, and we presume the jury came to the same conclusion; and, as stated by counsel for appellee, the physical fact that when the attempt was made to raise the smoke-stack and a steady strain placed upon the wire, that it broke, would be evidence that it was at least weak, and too weak for the purpose for which it was being used.

It is the well settled law of this state that the master is bound to exercise reasonable and ordinary care and diligence in providing safe machinery and appliances for those who are employed in his services. The Monmouth Mining & Mfg. Co. v. Erling, 148 Ill. 521; Leonard v. Kinnare, 174 Ill. 532.

The jury must have concluded, under the instructions given, that the appliance furnished was not rea-

sonably safe, and this was a fact to be determined by them, and we are not able to say that they were not warranted in so finding.

It is again said by counsel for appellant that the proof is not sufficient on the question of furnishing defective appliances to warrant a recovery, and that three propositions are necessary to be established to recover on that ground: First, that the appliance was defective; second, that the master had knowledge or ought to have had; third, that the servant did not know of the defect and had not equal means of knowledge with the master.

We have before stated, that as to whether or not the appliance was defective was a question of fact. However, counsel for appellant in his brief says: ''The whole trouble is, as we contend, that the plaintiff failed to use as many strands as was necessary to hold up the gin pole.'' And again he says: ''The only proof that the wire was too weak is because it broke, and it is quite apparent the reason it broke is because he did not use strands enough.'' In this, perhaps, counsel is correct, but whose fault is it that strands enough were not used? The evidence discloses that the appellee knew nothing about the construction or operation of a gin pole but that Mr. Hoy did, and that he was there, present at the time it was in operation. Mr. Hoy was the vice-principal of the defendant and if he permitted a gin pole to be used by the men that was not supported by a sufficient number of wires, then we think the defective appliance would be the fault of the defendant, and the jury were fully warranted in so finding.

As to the second proposition: did the master have knowledge, or ought he to have had, of the defective appliance herein used? Mr. Hoy, the superintendent, was a man of experience, was a mine manager, knew about the erection of gin poles, about the amount of weight that the wire thereon would have to support in undertaking to raise a heavy object, he knew that

this wire had been in use down in a wet mine for six months, and he ought to have known the strength of the wire that he was using for this purpose, and to have known that it was reasonably safe; yet as far as the evidence discloses he did not even examine the wire before directing its use. It seems, however, that in attempting to raise the smoke-stack the first strain that came upon the wire showed that it was too weak; a litle attention given to this matter by the superintendent would in all probability have convinced him that the wire was not sufficient. He did not give it the attention he ought to have done and we think the jury were warranted in finding that the defendant ought to have known the condition of the appliance. He at least assumed to know that it was sufficient because he directed the particular wire and the number of wires that were to be used in the construction of this gin-pole, and the jury were warranted in drawing the conclusion that he knew or ought to have known that the wire was unsafe. It is said by our Supreme Court in the case of Goldie et al. v. Werner, 151 Ill. 561: "If the jury gave credit to this witness, then they would be forced to believe that Schwartz himself selected this defective joist for the scaffold; and therefrom they might legitimately have drawn the conclusion that, in doing so, he, as the direct representative of the common master, and standing in the position of vice-principal, knew, or ought to have known that the joist was knotty, defective and unsafe." As Hoy who was the vice-principal of the defendant selected the wire to be used as a guy wire the jury were warranted in finding that he knew or ought to have known that it was defective.

It is again contended, that it must appear that the appellee did not know of the defect and had not equal means of knowledge with the master. The evidence in this case tends to show that the appellee had been engaged a greater part of his life as a glass blower; that in recent years he had been engaged in different kinds of common labor until he went to work for ap-

pellant, and while there he had been engaged around the mine in unloading cars, cement, brick and such kinds of work as from time to time arose for him to perform.   It appears from the evidence that he did not know anything about the construction or operation of a gin pole, and that he so told the defendant; that he had never seen one, and we do not believe that under such circumstances he would have any knowledge or would be expected to have any knowledge as to whether the wire was too weak or not. He was directed to use the particular wire that was used and when the gin pole was erected and the appellee knew that the materials for the erection of it had been selected by Mr. Hoy, he and the other servants engaged in the hoisting of the smoke-stack were not bound to examine for defects but had a right to assume that the appliance furnished was reasonably safe.  Our Supreme Court says in the case of Hines Lumber Co. v. Ligas, 172 Ill. 315: ''Under the rule that the servant has a right to presume that the master has discharged his duty of exercising reasonable care to see that the appliances supplied are reasonably safe for the use to which they are to be put, the servant is not bound to look for defects which are not patent to a man of his intelligence, knowledge and experience.'' We are not able to say from this record that the jury were not warranted in finding that the appliance furnished was defective, that the defendant ought by the exercise of reasonable care to have known this fact and that the plaintiff was not cognizant of the defect and did not have the same opportunity for knowing such defect as the master.

The court did not err in refusing defendant's instructions to direct a verdict.  Again it is claimed that the court erred in refusing instructions one to six of the defendant's refused instructions, but no particular reason is pointed out why any one of the instructions should have been given.  We have read the instructions

and find that in some of them the same propositions are involved that have been given in other instructions, and that the giving of such would have been a repetition; and as to the other instructions we see no error in refusing them.

Again, it is contended that the court erred in permitting the jury to separate at the close of the trial and after the instructions had been read to them and before they had commenced a consideration of their verdict but nothing is shown that the appellant was injured by this, and, while it is not the usual practice to permit juries to so separate after having been instructed, in the absence of any authority upon that question, and none has been cited by counsel, we would be unwilling to hold that it was reversible error, unless it is shown that appellant was in some manner prejudiced thereby.

We have carefully considered all of the evidence and instructions of the court in this case and we believe that the court did not err in overruling defendant's motion for a new trial and rendering judgment upon the verdict given in this case, and the judgment is affirmed.

*Judgment affirmed.*