Wm. Leyda et al., Administrators, Appellees, v. Kelly-Atkinson Company, Appellant.

### Gen. No. 17,066.

1. MASTER AND SERVANT—*when defective materials not selected by fellow-servant.* In an action for wrongful death where deceased fell on the breaking of a defective scaffold constructed of piping, recovery is not barred on the ground that fellow-servants selected the pipes in question, where the foreman ordered them to be selected from a certain pile and where they were selected before the deceased was employed and he was ordered to use the ones selected.

2. MASTER AND SERVANT—*duty to furnish reasonably safe materials.* If a construction company undertakes to furnish materials for a scaffold, reasonable care must be used to furnish reasonably safe materials.

3. Master and servant—*notice of defects in material for scaffolds.* In an action for personal injuries where the evidence shows that one of the pieces of pipe used for scaffolds had broken the year before and that such fact was known to defendant's foreman, defendant should have known of their defective condition.

4. Master and servant—*contributory negligence.* Contributory negligence by one killed on the breaking of a needle beam of a scaffold while deceased and another were moving planks thereon is not shown where it appears that the planks were being moved in the customary manner, and where it is conceded that if the pipe and coupler of which it was constructed had been sound the beam would have carried the weight.

Appeal from the Superior Court of Cook county; the Hon. Homer Abbott, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

Kremer & Greenfield, for appellant.

Richard J. Finn, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

This is an appeal from a judgment against the Kelly-Atkinson Company, hereinafter called the defendant, obtained by plaintiff in an action for damages for wrongfully causing the death of James Burns while in the employ of defendant on or about June 15, 1906.

Burns was one of a gang of four structural iron workers working as riveters on the Englewood branch of the South Side Elevated Railroad, then being constructed by the defendant, and with one other man lost his life by the breaking of a scaffold, which caused him to fall. The scaffold was slung by ropes from the top of the bridge or span of the elevated structure where it crossed the Pennsylvania tracks. It was constructed of iron pipes running parallel to each other, with planks placed across them where the work of riveting was being done. The bridge structure was about twenty-six feet wide, and when a single piece of pipe was not long enough to reach across this distance, two pieces were screwed together. It was the

custom for the men to rig or erect their own scaffolds from material furnished by the employer. The pipe that was in use on the occasion of the accident was taken from a pile consisting of about thirty or forty pieces, which was lying on the elevated structure nearby. It was hollow pipe, measuring 2½ inches inside and 3 inches outside diameter. This particular pipe had been used in 1904 and 1905 in a compressed air line, but had been lying unused and exposed upon the elevated structure all the winter and spring before the accident.

Burns and Decker, the men who lost their lives, came to work on the job three or four days before the accident. The day before they came to work, Thompson, defendant's foreman, ordered a man named Saddler, who was employed as a fitter, to go to this pile and get four pieces of pipe for needle beams. He did so, assisted by a man named O'Neill, who testified that they selected from the pile the best pipe they could find. Saddler says it was old pipe and rusty, but as near as he could see it looked all right. The next morning, when Burns and Decker came to work, they were ordered by the foreman, Thompson, to construct the scaffold in question with these four pieces of pipe, which was done, Thompson and O'Neill assisting. Thompson testified that he did not make an inspection of the pipes at the time to see whether they were strong enough to hold together. Two pieces of pipe eighteen feet long were screwed together, making a needle beam thirty-six feet long, with a coupling in the center. Two such needle beams were made and slung from the top of the structure parallel to each other, about eight feet apart, and across these six planks about twelve feet long were placed at the point where riveting was to be done. Burns and his gang worked on this scaffold two or three days. On the day of the accident they worked upon one end of the scaffold, and then they moved across to the other end. They moved by Burns and Decker sitting one on each needle beam and shoving the planks across in front.

A short time thereafter they started to move the planks across again in the same way, and had just reached the center, Burns being on the south needle beam and Becker on the north, when the coupling on the south needle beam gave way, and both men and planks fell to the ground.

We are met at the outset with the important question of fact as to the cause of the breaking of the coupling. The coupler was the ordinary gas pipe sleeve or coupler, attached to one end of a piece of pipe, within which sleeve were threads into which the other piece of pipe, which had threads on the end, was screwed. The break in question was about three-fourths of an inch from the end of the piece of pipe going into the sleeve. Defendant claims that the cause of the break was that the pipe was not screwed far enough into the coupler, while plaintiff claims that the break was caused by the rusty, weakened and defective condition of the end of the pipe which was screwed into the sleeve. After careful consideration of the evidence and an inspection of the pieces of pipe themselves, which are exhibits herein, we are of the opinion that the greater weight of the evidence tends to support the claim that the break was caused by the thread end of the pipe becoming worn so thin by use and rust from exposure as to be of insufficient strength for the purpose for which it was used. It would be of no value to recite at length the testimony and evidence upon which our conclusion is based. This was the apparent finding of the jury, and we see no good reason to dispute its correctness.

Defendant contends that even if the pipe in question was defective it is not liable, for the reason that the pipe was selected by a fellow-servant of Burns. It will be noted however, that the foreman, Thompson, directed that the material for the scaffold should be selected from a certain particular pile of pipe. This fact distinguishes this case from that class of scaffold cases in which the selection of the materials and the erec-

tion of the scaffold is left entirely to the workers themselves. It also distinguishes it from the facts involved in Nevin v. Grace Co., 165 Ill. App. 259, wherein it appears that the materials for the scaffold were selected from boards "incidentally lying in the building," without any direction or control of the employer. A further distinguishing fact is that Burns was not employed on this work at the time the particular four pieces of pipe were selected under orders from Thompson. The selection of material was made before he was employed, and hence there can be no relation of fellow-servant with him with reference to that particular act. It also appears that the first connection Burns had with the scaffold was in following the order of the foreman to construct the scaffold with the particular four pieces of pipe. He never directly or through a fellow-servant exercised any selection of the materials to be used. If the defendant undertook to select and furnish the materials with which to construct the scaffold, it was its duty to use reasonable care to furnish reasonably safe materials for the purpose. The evidence shows that one of these pieces of pipe had broken the year before, which fact was known to Thompson, the foreman, so that the defendant should have known of the defective condition of these pieces of pipe. Wrisley Co. v. Burke, 203 Ill. 250; Ehlen v. O'Donnell, 205 Ill. 38; Schillinger Bros. Co. v. Smith, 225 Ill. 74; Diamond Glue Co. v. Wietzychowski, 227 Ill. 338.

As to the claim that Burns was guilty of contributory negligence in moving the boards across on the needle beams as he did, the evidence discloses that this was the usual and customary manner of doing this. Also it is conceded that if the pipe and coupler had been sound and properly joined, the needle beam would have been sufficiently strong to carry the weight which was placed upon it.

Perceiving no error in the record, the judgment will be affirmed.

*Judgment affirmed.*