THE HIMROD COAL COMPANY

*v.*

S. M. CLARK, Admr.

*Opinion filed June 19, 1902.*

1. PLEADING—*when an allegation of negligence is good after verdict.* An allegation in a declaration against a mining company that the defendant negligently failed to keep its entry or roadway in a reasonably safe condition at the place of the accident, is effective, after verdict, as a common law allegation of negligence, notwithstanding it is particularly alleged, as a reason for the unsafe condition, that the defendant failed to place props or cross-pieces.

2. MASTER AND SERVANT—*master's duty of providing safe place to work is a positive obligation.* The duty of the master to use reasonable care to provide his servants with a reasonably safe place in which to work is a positive obligation, and he is liable for the negligent performance of such duty, whether he undertakes its performance personally or through another.

3. SAME—*servant not required to make examination for defects.* While it is the duty of a servant to take notice of defects which are patent, yet he is not required to make an examination for defects, but may act on the presumption that the master has used reasonable care in making the place where he works reasonably safe.

4. SAME—*servant does not assume risk of master's negligence.* A servant does not assume risks not ordinarily connected with the service, nor those which are due to a failure of the master to exercise reasonable care and prudence.

5. SAME—*effect of mining company putting up printed rules.* Printed rules of a mining company which are nothing but attempts to make laws are void, as against public policy, in so far as they operate as a contract against the negligence of the company.

6. PRACTICE—*when a motion to tax costs comes too late.* Where a cause is re-docketed after remandment and leave is given to file an amended declaration, if the defendant obtains a continuance and demurs and pleads over, it is then too late to urge a motion to tax the costs to the plaintiff from the time of re-docketing up to the filing of the amended declaration.

*Himrod Coal Co.* v. *Clark,* 99 Ill. App. 332, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. H. VANSELLAR, Judge, presiding.

This is a suit, brought in the name of the administrator, for the benefit of the widow and next of kin, for the alleged wrongful neglect of appellant to keep the roof of the entry or roadway in its mine near a certain room 11 therein in a reasonably safe condition, by propping the same, or otherwise making it secure for the employes to work under it.   The new declaration, which was filed on October 15, 1900, alleges that the appellant was the owner and operator of a coal mine, which it operated by means of a shaft, roadways, entries and servants, and that it had knowledge of the lack of props and cap-pieces, and of the consequent dangerous condition of the mine, or, by the exercise of ordinary care, might have known thereof.   The accident occurred on May 25, 1899.   The declaration alleges that the deceased, Christ Schroath, was employed in rooms on said entry as a machine runner, and, while he was so employed near room 11, and, while he was in the exercise of due care, a portion of the roof of the entry gave way and fell on him, so injuring him that he afterwards died.   On January 24, 1900, appellant filed a demurrer to the declaration, which was overruled, and thereupon, on March 14, 1901, appellant filed a plea of not guilty.   Upon the trial of the case the issues were found in favor of the appellee, and judgment was rendered upon the verdict.   The appellant took an appeal to the Appellate Court where the judgment was affirmed.   The present appeal is prosecuted from such judgment of affirmance.

D. D. EVANS, and G. M. McDOWELL, for appellant.

GEORGE G. MABIN, and S. M. CLARK, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first contention of the appellant is, that the declaration fails to state a cause of action.   The declaration is alleged to be framed upon the theory, that

it was the duty of the appellant to prop the roof of its mine, or of the entries therein, whereas it is claimed that no such duty is imposed by the common law, or by the statute. Appellant first demurred to the declaration, and, its demurrer being overruled, filed the plea of the general issue. By thus pleading it waived any objection to the declaration, unless the declaration is so defective that it will not sustain the judgment. Here, the appellant made a motion in arrest of judgment, which motion was overruled, and exception was taken to the overruling thereof. If the declaration is so defective that it will not sustain the judgment, such defect may be taken advantage of on motion in arrest of judgment, or on error. (*Kipp* v. *Lichtenstein*, 79 Ill. 358).

We are of the opinion that the defect, charged against the declaration, is not so serious that the declaration will not sustain the judgment. The declaration alleges, in substance, that the appellant company negligently failed to keep its entry or roadway in a reasonably safe condition at the place where the accident occurred. The law is well settled, that it is the duty of the master to use reasonable care to furnish his servants with a reasonably safe place for the performance of their work. This is a positive obligation resting upon the master, and he is liable for the negligent performance of such duty, whether he undertakes its performance personally, or through another person. (*Leonard* v. *Kinnare*, 174 Ill. 532; *Chicago and Alton Railroad Co.* v. *Scanlan*, 170 id. 106; *Hess* v. *Rosenthal*, 160 id. 621). The negligence set up is negligence at common law. The allegation in the declaration as to a failure to place props or cross-pieces is merely a statement of one of the reasons, why the place, where the deceased was working, was not safe. The allegation, that the entry or roadway of the mine was not kept in a reasonably safe condition, was none the less effective, as a common law allegation, because there was a specification of one particular in which such entry or

roadway was unsafe, namely, the absence of props or cross-pieces to support the roof. Although the averments of the declaration may be awkwardly expressed, yet the objection, thus made to it, is not of such a character, that it can now be raised, after the appellant has filed a plea, and gone to trial upon the merits.

*Second*—It is urged, as error, that the court refused to instruct the jury to find the appellant not guilty. The refusal of such instruction is said to be erroneous, upon the alleged ground that there was no evidence tending to show, that the deceased was in the exercise of due care for his own safety, or that the appellant was guilty of any negligence.

The proof tends to show, that the deceased was a machine miner; that it was his duty to operate his machine by compressed air in loosening and undercutting coal, and to move the machine from place to place in the mine, as it was needed; that, at the time of the accident, he was loading his tools on a truck in the main entry in the usual way for the purpose of moving to the next room, as it was his duty to do. Nor is it shown that, in doing so, he was guilty of any unusual or improper act. It is said, however, that he had an equal opportunity with the appellant to ascertain the dangerous condition of the roof, and that it was his duty to examine the place where he was about to work, and that such examination was imposed upon him as a duty by the rules of the company. The evidence tends to show, that the machine miners had nothing to do with timbering the mine or propping the roof; that this duty devolved upon certain men employed in the mine, known as timber-men; that the appellant employed two men to look after the safety of the roof of this entry, and other entries of its mine; that these timber-men were equipped with "sounding rods," instruments used for the purpose of detecting hidden defects in the roof; that the deceased was busy with his work, and had no time to make a careful examination, as he would only

be in the entry a few moments, and then would pass on to the next room. Under these circumstances, he had a right to rely upon the appellant, and its servants employed for that purpose, to see that the roof of the mine was safe. There is no evidence in the record, so far as we have been able to discover, tending to show that the deceased had any notice of any defects in the roof, or that the roof was in such condition that it was apt to fall. While it is the duty of a servant to take notice of defects which are patent, he is not required to make an examination for defects. On the contrary, he has a right to act upon the presumption, that the master has used reasonable care in making the place, in which he does his work, reasonably safe for that purpose. (*Hines Lumber Co.* v. *Ligas*, 172 Ill. 315; *Chicago and Eastern Illinois Railroad Co.* v. *Knapp*, 176 id. 127; *City of LaSalle* v. *Kostka*, 190 id. 130).

In order to charge a servant with negligence, it must be shown that he knew, that the appliance, with which he does his work, or that the place where he does it, is dangerous. (*Chicago and Eastern Illinois Railroad Co.* v. *Knapp, supra; Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 Ill. 330). A servant does not assume risks, which are not ordinarily connected with the service, and which are due to a failure of the master to exercise reasonable care and prudence. (*Chicago and Eastern Illinois Railroad Co.* v. *Kneirim*, 152 Ill. 458). Inasmuch as the master is bound to exercise care and prudence to prevent his employes from being exposed to unreasonable risks or dangers, the employe has a right to presume that the master will exercise such diligence in protecting him from injury; and it is only injuries, which arise after the exercise of that diligence and care on the part of the master, that can properly be termed such accidents or casualties, as the servant has impliedly agreed to take the risk of, and for which the master is not liable. (*City of LaSalle* v. *Kostka, supra*).

There is also evidence in the record tending to show that the appellant was guilty of negligence. There is evidence to the effect, that the mine manager, or foreman of the appellant, was informed of the dangerous condition of this roof before the accident occurred. One of the witnesses swears, that he discovered the dangerous condition of the roof within a few feet of the place where the deceased was killed, and spoke to the mine boss about it about two days before the happening of the accident. He also says that he pulled down certain loose rocks from the roof, and broke them up, and threw them away, and demanded pay for such work from the boss, and that the latter refused to pay him for the same. It is true that other testimony, furnished by the appellant, tends to show that the day and night managers of the mine made examination of the roof, and pronounced the same safe. These managers deny that they had any notice of its unsafe condition. But the testimony upon this subject was conflicting, and it was a matter for the jury to determine.

Certain rules established by the company were posted in different places, where it was supposed they could be seen by the workmen. These rules warned the workmen against risking themselves near or under loose coal or bad roofs, and required them to ascertain whether the places, where they were required to work, had been made safe before entering them. So far as the deceased was concerned, it is shown clearly that he was unable to read, and, therefore, the rules furnished him no guide for his action in the matter. The appellant company, however, could not escape liability under the law by printing and posting rules in and about the mine. These rules were nothing but attempts to make laws, and, so far as they are claimed to operate as a contract against the negligence and dereliction of the appellant company, they were void as against public policy. (14 Am. & Eng. Ency.

of Law,—1st ed.—p. 910). "A master cannot, by a contract with a servant, in consideration of the employment, exempt himself from liability to the servant for injuries sustained through his negligence. Such a contract is void as against public policy." (Ibid.)

*Third*—The appellant finds fault with the second instruction given by the court in behalf of the appellee. We see no objection to this instruction. It announced the doctrine that it was the duty of the appellant to provide a reasonably safe place for its servants to work in, and that, if it failed to provide such a reasonably safe place for appellee's intestate to work in, and, by reason of such failure the deceased, while engaged in the performance of his duties as appellant's employe, and while in the exercise of due care and caution for his own safety, was injured by the falling of the roof of the mine, by reason of the absence of sufficient props or other means of making it safe, so that he died from the effect of such injury, then the plaintiff was entitled to recover. The evidence tended to show, that the appellant failed to furnish props and cross-pieces at the place of the accident to support the roof, a portion of which fell upon the deceased. Whether or not the roof could have been made secure by the use of such props and cross-pieces was a matter, in reference to which much testimony was introduced by both sides, and in reference to which there was much conflict between the witnesses. The whole subject, however, was for the consideration of the jury, and being a question of fact, it is settled by the judgments of the lower courts.

Counsel for the appellant refer to a number of instructions, asked by it and refused by the trial court, and insist that such refusal was error, but the respects in which such instructions are alleged to have been erroneous are not pointed out in the argument of counsel, and, therefore, cannot be considered. The fourth instruction, asked by the appellant, told the jury that the appellee was

bound to show, that the deceased was in the exercise of ordinary care for his own safety, and that the accident was the result of the negligence of the appellant; and that the burden of proof was upon the appellee to establish these two facts by testimony. The substance of this instruction was embodied in many other instructions given for both sides by the trial court, and, therefore, its refusal could have caused no harm to the appellant. Appellant also complains that the court erroneously refused to give the third instruction asked by it. There was no error in refusing this instruction, because it required the jury to draw a distinction between a state of facts, which would make an individual liable for such an injury as occurred to the deceased, if this suit had been against an individual, and the state of facts which would authorize a recovery against the appellant company. Instructions should direct the attention of the jury to the facts established by the evidence, and not to some different state of facts, which might be proven in case of a suit against some other defendant than the defendant actually sued in the cause on trial.

*Fourth*—This case, as originally commenced in the circuit court, was tried, and the trial resulted in verdict and judgment in favor of the plaintiff. Upon appeal to the Appellate Court the judgment was reversed, and the cause was remanded to the circuit court "for such further proceedings as to law and justice appertain." After the reversal in the Appellate Court and the re-docketing of the cause in the circuit court, leave was asked to file a new and amended declaration. This leave was granted, and the new declaration filed on October 15, 1900. Subsequently, on March 14, 1901, a motion was made by the appellant to tax the costs to the present appellee from the time of such re-docketing up to the time of filing such new and amended declaration. This motion was overruled, and to the overruling thereof appellant excepted. The overruling of said motion is assigned for error.

There was no error in overruling the motion to tax
these costs to the appellee, for the reason that the mo-
tion came too late. No such motion was made at the time
leave was granted to file the new declaration. After the
filing of the new declaration, appellant made a motion
for a continuance of the cause, which was sustained by
the court, and the cause was continued. Subsequently,
appellant filed a demurrer to the declaration, which de-
murrer was argued, and overruled by the court. Still
later, to-wit, on March 14, 1901, appellant filed a plea of
not guilty. It was not until after all these steps were
taken, that the motion to tax these costs was made by
appellant. Section 23 of the Practice act provides that,
at any time before final judgment in a civil suit, amend-
ments may be allowed on such terms as are just and rea-
sonable. Section 1 of the act in relation to amendments
and jeofails provides, that the court shall have power
to permit amendments in any pleading, either in form or
substance, for the furtherance of justice, on such terms
as shall be just, at any time before judgment rendered
therein. Here, the court permitted the amendment with-
out requiring any terms from the plaintiff below. The
making of amendments in such cases is largely within
the discretion of the court. (*Misch* v. *McAlpine*, 78 Ill. 507).
The terms are ordinarily imposed, as a condition prece-
dent to the granting of leave to make the amendment.
In other words, the imposition of terms generally pre-
cedes the granting of leave. The appellant made no
objection to the granting of leave to file the amended
declaration, and did not ask that terms be imposed upon
the plaintiff below, as a condition to the granting of such
leave. The failure to make the motion, until after the
cause had been continued at appellant's request, and a
demurrer had been filed to the declaration and overruled,
and a plea of the general issue had been filed, amounted
to a waiver of the right of appellant to insist upon the
imposition of such terms. There is nothing to show, that

the court abused its legal discretion by permitting the amendment to be made without requiring the plaintiff below to submit to terms.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*