## Spring Valley Coal Company v. Patrick McCarthy.

### Gen. No. 4,818.

1. Assumed risk—*what not within doctrine of.* A servant only assumes risks of injury which may arise after a master has used reasonable care to make the place at which he has been assigned to work reasonably safe.

2. Expert—*how should be examined.* The proper way to examine an expert who is not acquainted with the facts, is to put to him a hypothetical question embodying the facts which the examiner claims the proofs tend to establish.

3. Arguments of counsel—*what essential to preservation of, for review.* In order to preserve for review alleged improper arguments of counsel, such arguments must be certified to by the trial judge in the bill of exceptions.

4. Instruction—*when upon future pain and suffering, harmless.* An instruction authorizing the allowance of damages for future pain and suffering is not prejudicially erroneous notwithstanding there may have been no direct evidence as to future pain and suffering, where it appears that the case was tried about two months after the accident, that the plaintiff had been in a hospital a considerable portion of the time intervening between the accident and the trial, had for a period walked about upon crutches and afterwards with a cane and had had medical treatment because of his injury within a week before the trial.

5. Remittitur—*where required by improper conduct of counsel.* Where counsel in his opening argument to the jury states, for the apparent purpose of arousing sympathy, that the plaintiff had a wife and five children, it is proper in order to cure the harm which may have resulted from such remarks to order a *remittitur.*

Action in case for personal injuries. Appeal from the Circuit Court of Bureau County; the Hon. R. M. Skinner, Judge, presiding. Heard in this court at the April term, 1907. Affirmed upon *remittitur.* Opinion filed October 10, 1907.

**Statement by the Court.** Appellant operated a soft coal mine at Seatonville, Bureau county, by the "long wall" system. There was in the mine an entry known as the second right off the main northeast off the main east. Appellee was a driver in the employ of appellant in this mine, and worked nights. About three o'clock in the afternoon of August 14, 1906, he entered the mine and was informed by

the night boss that he would have men at the face of the coal in the entry above described and a gob room. It then became appellee's duty to go to the face of the coal at the head of that entry and haul out to the gob room such cars loaded with rock and earth as the repair gang might have ready for him. He made three trips before supper. After supper, about eight o'clock in the evening, he was going by this place to reach the face of the coal when a mass of rock and earth fell upon him from the roof of the entry, the amount so falling being variously estimated by the witnesses at from 1,800 pounds to four tons. Appellee's right arm was crushed between the rock and the rail of the track and he was injured about the hips and back and across the kidneys. The next day it became necessary to amputate his right arm about half way between the wrist and the elbow. He brought this suit to recover damages for said injuries. The amended declaration contained four counts. The first charged that appellant negligently permitted said entry at that place to be and remain in an unsafe and dangerous condition on that day and for a long time prior thereto and negligently permitted the roof at that place to become cracked and broken and in danger of falling, as appellant well knew or by the exercise of reasonable care would have known and which condition was unknown to appellee, nor was appellee possessed of equal means with appellant of knowing of said dangerous condition of the roof, and while appellee was at said entry way, in the discharge of his duty and in the exercise of ordinary care for his own safety, through the negligence of appellant a mass of stone and dirt comprising a part of the roof fell upon appellee and caused said injuries. The second count was similar. The third count charged that appellant negligently failed to prop, timber or support the roof at that place, but permitted it to remain without support while the roof was in a broken and dangerous condition, which appellant well knew, etc., as in the first and second counts. The fourth count charged a wilful violation of the mining act in failing to have a mine examiner perform the duties prescribed by statute and to place a conspicuous mark

S. V. C. Co. v. McCarthy.

where there was danger. Appellant pleaded not guilty and there was a jury trial. At the close of the evidence appellee dismissed the fourth count. Appellee had a verdict and a judgment for $10,000.

McDougall, Chapman & Bayne, for appellant.

Duncan, Doyle & O'Conor, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

Appellant contends that the place where appellee was hurt was not dangerous and that appellant was not guilty of any negligence contributing to his injury. There was much conflict in the evidence upon this subject. Appellee's witnesses described the condition of the roof, but were not permitted to state whether it was dangerous, because of an objection interposed by appellant on that subject and sustained. We find, however, that one witness did practically state that he regarded it as dangerous, and that it appeared so to him, and there was also proof by another witness that he was afraid to go under it on that day. The proof showed that there had been a serious fall from the roof during the previous day at or very close to that place, and also another like fall at the same place two or three days before. Proof of these falls just before the accident to appellee was competent, both as tending to show that the place was dangerous and also to show notice to appellant of its condition. There was also proof of wide cracks in the roof at that place on that day. Appellant introduced proof tending to show that the roof was not dangerous and that the fall was due to an unavoidable "squeeze" which could not be foreseen or provided against. We are of opinion that this conflicting proof required the submission of the cause to the jury. If there were such wide gaps or cracks in the roof as were described by appellee's witnesses, following immediately after two severe falls from the roof, the jury might well have found that appellant was negligent in directing appellee to work thereunder without first brushing or propping the roof.

It is argued that if the danger was so apparent, then appellee was guilty of contributory negligence in passing under the roof at that place. Appellee had no duty of inspection. Appellant had other servants whose duty it was to inspect and repair. Appellee had never worked in this entry until he went in at three o'clock that afternoon. He was entirely unacquainted with the place. The only light he had was a lamp on the front of his cap. It was necessary to keep that light turned toward the path along which the mule was to travel. Appellee did turn the light up into the roof sufficiently to see that no chalk marks had been placed there by the mine examiner to indicate danger. If he had made a careful examination of the roof he could have discovered the cracked condition seen by the other workmen. But he had not been notified of the falls at that point during the last two or three days and there was nothing to put him upon this inquiry. It was the duty of the master to exercise reasonable care to provide him a reasonably safe place in which to do the work directed by the night boss. In the absence of any information or notice of danger he had a right to rely upon the performance of that duty by the master. The evidence would not have warranted the jury in finding appellee guilty of contributory negligence.

It is argued that the fall of this roof was one of the risks which appellee assumed. This position is taken in connection with proof introduced by appellant that a squeeze is inevitable and frequent, and cannot always be foreseen. No doubt it was proper to submit to the jury the question whether appellee assumed this risk, but it is only such injuries as arise after the master has used reasonable care to make the place reasonably safe in which he desires the servant to work, of which the servant impliedly agrees to assume the risk and for which the master is not liable. Himrod Coal Co. v. Clark, 197 Ill., 514.

Appellant examined Leo Gluck, who had had experience for many years in coal mining and who held a certificate qualifying him to act as mine manager and mine inspector. It is urged the court erred in sustaining an objection to the

S. V. C. Co. v. McCarthy.

following question put to him by appellant: "From the fact that there are cracks in the roof, does that necessarily indicate a dangerous condition of the roof?" The witness had testified that, so far as he knew, he had not been in that part of the mine for two weeks before or two weeks after this accident. He knew nothing about the actual condition of the roof at that time. The proper way to examine an expert who is not acquainted with the facts is to put to him a hypothetical question embodying the facts which the examiner claims the proofs tend to establish. This question did not conform to that rule. Moreover it did not specify how wide or numerous were the cracks to which the examiner intended to refer. The objection was properly sustained. The reading of the entire examination of that witness also shows that his views on that subject were fully developed.

When plaintiff dismissed the fourth count, the court excluded the mine examiner's book, which had previously been introduced in evidence, and all evidence relating to the duties of the mine examiner and his report, and the evidence given by the mine examiner relating to his report and his duties, but left standing the testimony given by the mine examiner as to the conditions which he saw in the mine. Appellant argues that it was injured by the course thus pursued. Appellee had a right to try to prove his fourth count, and if he was dissatisfied with his proof thereunder he had a right to dismiss that count. The court seems to have ruled properly upon that evidence, but if the court should have excluded any thing further it was not asked to do so by appellant, nor did appellant take any exception to the ruling or to the failure to rule.

It is argued that appellee's attorney called the attention of the jury to the fact that appellant was insured against accident, and that this was reversible error. The only foundation for this position is that on the cross-examination of defendant's witness White, he was asked, concerning an occasion when a certain statement was taken from another witness, "Was Mr. Bayne, attorney for the Ætna Insurance Company, there?" Appellant objected, and appellee's at-

torney withdrew the question, and said; "I beg your pardon—I mean was Mr. Bayne, the attorney for the Spring Valley Coal Company there?" We are unable to see that the jury were told that appellant was insured, or that there was anything in that statement to inform the jury that the Ætna Insurance Company insured against accident or had insured appellant.

Appellant argues that appellee's attorney in his closing argument to the jury erroneously asked the jury to value the damages as they would if it were their own right arm. The bill of exceptions does not show what language appellee's counsel in fact used. It recites that the language used by appellee's attorney in his argument to the jury is not preserved in the record, but that what purports to be his language is set forth in the objection. We do not understand this to be a statement by the trial judge that appellee's attorney did use the language attributed to him, and it is essential to preserve the language in order to present the question of its propriety. Moreover, the court sustained the objection, and appellant has no exception in the record on this subject.

The first instruction given at plaintiff's request told the jury among other things: "You may consider what, if any, effect such injuries may have upon him in future in respect to pain and suffering." It is argued that there was no evidence that he would suffer any future pain. This case was tried about two months after the accident. Appellee had been in a hospital a considerable portion of that time; had then walked about on crutches and afterwards with a cane, and had medical treatment because of that injury within a week before the trial. Under all these circumstances, and considering the character of the injury, we do not think the reference to "future pain and suffering" in the instruction could have harmed appellant.

In his opening statement to the jury appellee's attorney said that appellee had a wife and five children. This was improper. The size of appellee's family had no bearing upon the issues to be tried. This statement was calculated

to arouse the sympathy of the jury and to increase the amount of the verdict, and we fail to see any other purpose for which it could have been made. The court properly sustained an objection to it. Did that ruling cure the ill effect of the improper statement? Upon consideration of all the facts disclosed by this record, we conclude that appellee should be required to remit $2,000 from the amount of the verdict, or that we should reverse the judgment and grant a new trial in order to remove from the minds of the jury the effect of that improper statement.

This opinion will be lodged with the clerk, without filing, and counsel will be notified thereof, and if, within seven days, appellee files here a *remittitur* of $2,000, the judgment will be affirmed in the sum of $8,000 at the costs of appellee, and if not it will be reversed and the cause remanded.

Thereafter appellee filed here a *remittitur* for $2,000, and said judgment is accordingly affirmed in the sum of $8,000 at the costs of appellee.

*Affirmed upon remittitur.*