**Patrick McCarthy, Appellee, v. Spring Valley Coal Company, Appellant.**

**Gen. No. 5,086.**

1. MASTER AND SERVANT—*what risks assumed.* It is only such injuries as arise after the master has used reasonable care to make the place reasonably safe in which he directs a servant to work, of which the servant impliedly agrees to assume the risk, and for which the master is not liable.

2. MASTER AND SERVANT—*what risk not assumed.* *Held,* that the servant in this case did not assume the risk arising from a dangerous condition of the roof of a mine, the falling of which caused the injury in question.

3. CONTRIBUTORY NEGLIGENCE—*when remaining in place of danger does not constitute.* *Held,* that a servant who was injured by the falling of the roof of a mine was not guilty of contributory negligence in remaining in a place of danger, it not appearing that he knew or was presumed to know the conditions which resulted in the accident in question.

4. INSTRUCTIONS—*when upon question of allowance for medical expenses in personal injury action not erroneous.* Where the evidence shows that medical services were performed and the value thereof, the presumption is that the plaintiff to whom such services

were rendered is liable therefor and an instruction which authorized the jury to consider them is therefore not erroneous.

5. VERDICTS—*how cannot be impeached.* Affidavits of the jurors themselves as to things that took place in their retirement while considering their verdict, will not be received to impeach such verdict as returned into court.

DIBELL, J., dissenting in part.

Action in case for personal injuries. Appeal from the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed April 28, 1909.

McDOUGALL, CHAPMAN & BAYNE, for appellant.

DUNCAN, DOYLE & O'CONOR, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellant operated a coal mine in Seatonville, Bureau county, Illinois, in which appellee was employed as a driver, working nights. On one of his trips on the evening of August 14, 1906, a quantity of rock and earth fell upon him from the roof, inflicting serious injuries upon him. To recover damages for these injuries, he brought this suit. The amended declaration contained four counts. The first charged that appellant negligently permitted an entry at that place to be and remain in an unsafe and dangerous condition on that day and for a long time prior thereto, and negligently permitted the roof, at that place, to become cracked and broken and in danger of falling, as appellant well knew or, by the exercise of reasonable care, would have known, and which condition was unknown to appellee, nor was appellee possessed of equal means with appellant of knowing of said dangerous condition of the roof, and while appellee was at said entry way in the discharge of his duty and in the exercise of ordinary care for his own safety, through the negligence of appellant a mass of stone and dirt, composing a part of the roof, fell upon appellee and caused said injuries. The second count was similar. The third

count charged that appellant negligently failed to prop, timber or support the roof at that place, which was in a broken and dangerous condition as appellant well knew, etc., as in the first and second counts stated. The fourth count charged a wilful violation of the mining act in failing to have a mine examiner perform the duties prescribed by said act and to place a conspicuous mark where there was danger. Appellant pleaded not guilty, and there was a jury trial. At the close of the evidence, the fourth count was dismissed. Appellee had a verdict and a judgment for $10,000. On an appeal to this court, that judgment was ordered affirmed on the condition that appellee remit $2,000. This *remittitur* was ordered because, in his opening statement to the jury, appellee's attorney stated that appellee had a wife and five children. A *remittitur* was filed and the judgment was affirmed for $8,000. Spring Valley Coal Co. v. McCarthy, 136 Ill. App. 473. The Supreme Court afterwards reversed such judgment on account of this statement of counsel. McCarthy v. Spring Valley Coal Co., 232 Ill. 473. Later, there was another trial, and a verdict and a judgment for appellee for $11,500. A motion for a new trial was denied. Judgment was entered on the verdict and the company prosecutes this appeal.

The pleadings in this are the same as in the former record, after the dismissal of the fourth count; and a careful reading of this record discloses that the evidence bearing upon the issues tendered by the pleadings is substantially the same.

It is insisted that the evidence does not establish the negligence charged in the declaration. It does show that appellee was employed by appellant as a driver in its mine at night; and that about 3 o'clock in the afternoon of August 14, 1906, he entered the mine and was told by appellant's night boss that he would have men at the face of the coal in an entry known as "the second right off the main north east off the main east," and at a gob room. Appellee's duty was to go to the

face of the coal in the entry with a mule and haul out to the gob room such cars loaded with rock and earth as might be ready for him. He made three trips before supper. After supper, about 8 o'clock, as he was going along the entry towards the face of the coal, a quantity of rock and earth, variously estimated by the witnesses at from 1,800 pounds to four tons, fell from the roof of the entry, a part striking him. His right arm was crushed between the rock and the rail of the track over which the car was being drawn, so that it had to be amputated between the wrist and the elbow; and he sustained injuries about his hips and back over the kidneys. These latter enumerated injuries were not shown to be of a permanent nature. The evidence also showed that a considerable quantity of rock had fallen from the roof of the entry, at or near the place of the accident, during the previous day or night, and also a like fall at the same place two or three days before; and that on the day of the accident the roof was cracked and broken. One wide and deep crack was caused by rock falling from the roof, and had been there for some days. This condition was known to the employes of appellant whose duty it was to look after the roof and mark dangerous places. The mine examiner, after the last fall of rock on the night before the accident, examined at the place of the accident, and, notwithstanding the fact that there had been a fall of rock prior to his examination, did not put up a danger signal. There was also evidence tending to show that the roof of the entry at the place where appellee was injured was safe just prior to the accident, and proof to the effect that it did not need to be supported by timbers or otherwise; and opinions by certain witnesses that it was safe, and proof to the effect that appellant did not know of the dangerous condition of the roof as testified to by certain witnesses for appellee; and proof to the effect that appellant had performed all the duties required of it by law for the safety of appellee. This pronounced conflict in the evidence presented a

question of fact for the consideration of the jury. Therefore there was no error in the refusal of the court to direct a verdict for appellant.

It is argued that the fall of the roof was a risk of appellee's employment and therefore assumed by him. This contention is supported by the argument that the fall of the rock was the result of what is known in mines as a squeeze or settling caused by undermining, which could not be foreseen and avoided, and that appellee was aware of the probability of injury from a squeeze, and therefore assumed such risk and cannot recover for his injuries. There is evidence to the effect that on the day of the accident there was a squeeze in the mine, and that some of the men quit work on that account, but the evidence is indefinite as to the extent of the squeeze and its effect in various parts of the mine, and there is no evidence that appellee had knowledge that there was a squeeze in the mine. It is only such injuries as arise after the master has used reasonable care to make the place reasonably safe in which he directs the servant to work, of which the servant impliedly agrees to assume the risk, and for which the master is not liable. Himrod Coal Co. v. Clark, 197 Ill. 514; Spring Valley Coal Company v. McCarthy, 136 Ill. App. 473. Whether the accident was caused by the squeeze or by the negligence of appellant in suffering the roof to become and remain dangerous, was a question of fact for the jury. Two juries have found that the accident resulted from appellant's negligence in permitting the roof to become and remain in a dangerous condition, and we are of the opinion that the evidence supports their finding.

It is urged that the danger was apparent, and that appellee was guilty of contributory negligence. Appellee had never been at the place where the accident occurred prior to 3 o'clock on that afternoon and was unacquainted with the locality. While he was bound to take notice of defects which were patent, he was not required to make an examination for defects.

Leonard v. Kinnare, 174 Ill. 532. In the absence of notice or information of danger, he was warranted in acting on the presumption that appellant had used reasonable care in furnishing him with a reasonably safe place in which to work. Hess v. Rosenthal, 160 Ill. 621. He had not been notified of the fall of rock. He knew that appellant had servants whose duty it was to inspect and repair the mine. The only light he had was a lamp on the front of his cap. It was necessary to keep that light turned towards the path along which the mule was to walk. He did use the light in the roof sufficiently to see that no chalk marks had been placed there by the mine examiner to indicate danger. In our opinion, the jury were justified by the evidence in finding appellee was not guilty of negligence contributing to the injury.

Evidence was admitted to show the condition of the roof at the place of the accident, for a number of days prior thereto. It is insisted this was error, for the reason that there had been a fall of rock and dirt the night before, and the condition of the roof of the entry had been thereby changed. While by reason of the fall of rock on the night prior to the accident, the condition of the roof of the entry was not precisely the same as it was some days prior thereto, the evidence was competent for the purpose of showing that an unsafe or dangerous condition of the roof of the entry had existed for some time, and that appellant had, or by the exercise of reasonable care, might have had notice of it. If rock and earth were falling from the roof of the entry way at intervals, it certainly tended to prove an unsafe condition, though the condition of the roof was somewhat changed with each fall.

The second instruction given for appellee told the jury, if they found for appellee, in determining the amount of their verdict, to take into consideration his health and physical condition since the injury, and any necessary expense he might have been put to, in and about caring for himself. This, appellant argues, was

erroneous, because there was no evidence showing that appellee's health and physical condition were impaired since the accident, with the exception of the loss of his hand; and that there was no proof whatever showing that he had incurred any expense in his efforts to be cured. Appellant's admission that appellee had lost a hand as a result of the accident, in our opinion, obviates further discussion of the first objection to the instruction. As to the second objection, the physician who amputated the hand and attended him and rendered all the medical services appellee needed thereafter, testified that the value of such services was from $50 to $100. He did not testify that he made a charge against appellee or that appellee paid him. The presumption is, that appellee was liable for such services. As another instruction told the jury that this expense had to be proved by direct evidence, we are of opinion that the second element of the instruction complained of, does not amount to harmful error.

During the trial an article was published in the Bureau County Republican calling attention to the case, telling of its supposed merits and the reason for its previous reversal. It appeared that eleven of the jurors were subscribers to the paper. There was no proof, however, that any of the jurymen saw the paper or read or heard read the article. On the motion for a new trial, appellant offered to show that after verdict, the foreman of the jury stated that in deliberation in the jury room, before a verdict was arrived at, the article appearing in the Bureau County Republican was discussed. To this offer, an objection was properly sustained. This offer involved a matter which took place while the jury were considering their verdict. Affidavits of the jurors themselves as to things that took place in their retirement while considering their verdict, will not be received to impeach such verdict as returned into court. City of Chicago v. Saldman, 225 Ill. 629. The policy of this rule is too evident to require any citation of authorities. For

the same reason that the affidavit of the juror is not admissible, any statement by him showing his own misconduct must also be excluded. In Allison v. People, 45 Ill. 39, the court said: "We therefore perceive no difference in the effect, whether the facts are sworn to by the jurymen or by persons learning them from the jurymen." A juror will not be permitted to make evidence by statements not under oath which he would not be permitted to make under oath. Niccolls v. Foster, 89 Ill. 386; City of Chicago v. Saldman, *supra.* There was, then, no competent evidence offered tending to show that the article published in the Bureau County Republican in any way influenced the verdict of the jury, and there was no error in denying a new trial on that ground.

On the former hearing we indicated our opinion that the damages should be reduced to $8,000. We see no reason to change that conclusion. To permit the present judgment to stand for its full amount would be to enable appellee to profit to the extent of $1,500 by the misconduct of his counsel at the former trial. We cannot approve that result.

This opinion will be lodged with the clerk, and if within seven days appellee files herein a *remittitur* of $3,500 of the judgment, it will be affirmed in the sum of $8,000, at the costs of appellee. If such *remittitur* is not filed, the judgment will be reversed and the cause remanded for a new trial.

Thereafter appellee filed herein a *remittitur* of $3,500 of the judgment and it is therefore affirmed in the sum of $8,000 at the costs of the appellee.

*Affirmed upon remittitur.*


Mr. Justice Dibell dissents from so much of the foregoing opinion as requires a *remittitur.*