**John F. Devine, Administrator, Appellee, v. Elliott W. Sproul, Appellant.**

**Gen. No. 16,976.**

1. MASTER AND SERVANT—*safe place to work.* Plaintiff was wheeling sand over a single plank runway and dumping it into pits in a roundhouse in course of construction. As the planks were moved from one pit to another, they were nailed to cross-pieces, this work being done by another employee. Another laborer, whose barrow had slipped off the runway, in jerking it back, displaced a plank which had not been nailed, causing the plank on which plaintiff was standing, which was also unnailed, to swing around, whereby plaintiff's barrow fell into the pit, dragging him after it. *Held* proper to leave to the jury the question whether the defendant contractor, in leaving such plank over the pit unfastened at the ends, used reasonable care to furnish plaintiff a safe place to work, and the question whether, if he did not, the danger was so obvious to plaintiff that he must be said to have assumed the risk.

2. MASTER AND SERVANT—*duty of master to ascertain, of servant to observe danger.* A servant must take notice of obvious material conditions and of obvious danger, but he is not obliged to look for

these, while the master must ascertain material conditions and danger which can be found by the exercise of reasonable diligence, the master having a duty of inspection as well as of observation, while the obligation of the servant is that of observation only.

3. MASTER AND SERVANT—*safe place to work.* The duty of using ordinary or reasonable care to furnish a reasonably safe place for his servants to work in and reasonably safe appliances to work with is a positive and primary duty, for default in which the master is liable, whether he undertakes its performance personally or through another.

4. MASTER AND SERVANT—*simplicity of appliance.* While it is true that the simpler an appliance or the condition of a working place, the more probable it is that danger in it, if it exists, will be obvious, such simplicity, however, does not conclusively prove the obviousness under all circumstances.

5. MASTER AND SERVANT—*concurrent negligence of fellow-servant no defense.* Where the jury find that it was necessary to the happening of an accident that negligence of the master and that of a fellow-servant of plaintiff should have concurrently existed, such concurrent negligence of a third person, without which, notwithstanding the negligence of the master, the plaintiff would not have been injured, is no defense.

6. INSTRUCTIONS—*several on same proposition.* When a party asks more than one instruction stating in varying language the same proposition, his complaint that the court refused the one deemed by him most favorable to his cause and gave the other does not deserve extended notice.

7. MASTER AND SERVANT—*evidence.* Where plaintiff was injured through the slipping of an unnailed plank in a runway, evidence that he saw other planks nailed is admissible.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 4, 1913.

F. J. CANTY and J. C. M. CLOW, for appellant; R. J. FOLONIE, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellee in this case recovered a judgment March 28, 1910, in the Superior Court of Cook county against the appellant, Elliott W. Sproul, which the latter in this appeal seeks to reverse. The appellee Golden died pending this appeal and his administrator has been substituted as appellee. The judgment was rendered on the verdict of a jury in a personal injury case.

Golden was a laborer employed by Sproul, a contractor. Sproul was building under contract a railroad roundhouse. The roundhouse at the time of the accident was not completed. The roof was not on and the walls were not yet entirely finished. In the roundhouse were twelve or thirteen pits, each about 50 feet long, 4 feet wide and 3 or 4 feet deep, so constructed that when finished a locomotive might be run over it, and inspected and repaired by workmen below. These pits were partially finished. The walls were in and in the pit where the accident occurred some spikes were inserted in them. The concrete floor with which it and the others was to be provided had not been built.

The plaintiff Golden and one Casey, his companion in the work, were wheeling sand to be used in the concrete over a single plank runway and dumping it into the various pits. The runway ran from a sand pile south of the roundhouse to the pit to which sand was for the time being carried. The distance was about a hundred and fifty feet. The runway ran north from the sand pile and then in each case apparently when near or opposite to the pit turned sharply to the pit. At all events it did so in the case of the pit that Casey and the plaintiff were working at when the accident occurred. During the day sufficient sand had been carried to three or four of the pits and they were working at another. As the work was completed at each pit a portion of the runway was removed and replaced to make the proper passage to the next one which was to have attention. Just how much was thus relocated does not appear, but certainly the por-

tion which ran east and west must have been so changed. This runway was made of planks twelve inches wide and of varying lengths. Counsel for the appellant in their argument say "the most of them were from twelve to fourteen feet long." There was some little variance in the testimony regarding this, but it is immaterial. At the end and middle of each plank was a cross piece and the cross pieces were some six, some eight and some ten inches wide. Two planks met in the middle of the cross piece. From the north and south runway at the place of this accident, there was an east and west continuation of it which ran five feet over the ground and then over the center of the pit lengthwise of it. The cross pieces over the pit extended from one side of the width of it over to the other.

According to the testimony of the plaintiff, introduced without objection on the part of defendant and indeed a part of which was upon cross-examination by defendant's counsel, a man for the purpose of laying the runway ahead when the pit worked it was changed, pulled up a part of the runway as it had been used, laid it to the new pit and "nailed it with a hammer." On cross-examination the plaintiff said, "A man there nailed and looked after that business." Further testimony that was offered by plaintiff's counsel respecting the nailing of the planks other than that concerned in this accident was objected to by the defendant's counsel and excluded. We think counsel is mistaken in stating in its argument here that "*over defendant's objection* plaintiff was allowed to show that the ends of the other plans were nailed to the cross pieces." But this is immaterial, for in the view we take of this case we think that it was competent, proper and relevant evidence as bearing on the most material question in the case—whether the plaintiff must have so clearly and obviously have

known of the danger and risk he was running in working in an unsafe place. If there was error, it was not in admitting the evidence of this nailing of the boards of the runway generally, but in excluding it.

For the pit where the accident happened, Casey and the plaintiff had been going along this board runway with barrows full of sand and coming back to the sand pile with the empty barrows. It was not wide enough to permit two persons to pass on it. The men worked together, one wheeling his barrow of sand directly after the other north along the runway until they came to the sharp turn to the west, then running over the east and west part of the runway to the part of the pit they were filling. The man who was behind the other in going to the pit preceded him on the return. At the point of turning the narrowness of the way sometimes made the barrow slip off the boards. On the trip when the accident in question here occurred, the plaintiff had preceded Casey onto the pit runway. The plaintiff had dumped his barrow at about the middle of the pit; Casey had dumped his just east of the plaintiff and both proceeded back toward the long runway. Casey was walking west pulling his barrow behind him, while plaintiff was pushing his barrow ahead of him. In making the turn to the long runway Casey's barrow ran off to the ground. He was then turning south and in jerking the barrow to get it back on the plank it moved the east end of the east plank of the east and west runway about two feet to the south. This particular plank was not nailed to the cross pieces at either end. Therefore when Casey's action jerked the east end of the plank to the south, the west end, which rested on a cross piece running across the pit, was swung around to the north. This occurred just as plaintiff's barrow was going on it. The heavy barrow fell into the pit, dragging the plaintiff after it. He cut his head and face on the spikes sticking out of

the wall of the pit and fractured or dislocated a bone in his shoulder.

Golden sued his employer, Sproul. · The gist of his declaration, to which the defendant pleaded the general issue, was a charge of failure on the part of the defendant to use proper care to furnish the plaintiff a safe place to work, the allegation in that regard specifically being that the defendant constructed the runway in question and the plaintiff and others were required by the defendant to run wheelbarrows over it, and that regardless of his duty to use due care to construct and maintain the runway in a reasonably safe, secure and proper condition, the defendant constructed and maintained it in an unsafe condition, in that the boards were unfastened and insecure, in consequence of which the plaintiff was injured.

The appellant contends that the declaration states no cause of action, and that a motion in arrest which was made should have been granted, and by his argument and his assignments of error maintains also that the case should have been taken from the jury by a peremptory instruction, and that the verdict is against the weight of the evidence.

We are unable to concur in these conclusions. The duty of using ordinary or reasonable care to furnish a reasonably safe place for his servants to work in and reasonably safe appliances to work with is a positive and primary duty, for default in which the master is liable, whether he undertakes its performance personally or through another. Himrod Coal Co. v. Clark, 197 Ill. 514, and cases there cited.

Whether the conditions and appliances are simple or the reverse, the doctrine, well stated in Illinois Steel Co. v. Mann, 100 Ill. App. 367, which but, expresses the effect of many decisions of the Supreme Court, is true:

"A servant must *take notice* of obvious material conditions and of obvious danger, but he is not obliged to look for these; while the master must *ascertain* material conditions and danger which can be found by the exercise of reasonable diligence.   *   *   *   In other words, the master has a duty of inspection as well as of observation; the obligation of the servant is that of observation only."

Applying these propositions to the facts of the case at bar, it seems to us that it was proper to leave to the jury the question whether the defendant did or not, in leaving the plank over the pit unfastened at the ends, use reasonable care to furnish the defendant a reasonably safe place to work, and the question whether, if he did not, the danger was so obvious to the plaintiff that he must be said to have assumed the risk.

On this question, we think material and competent the evidence that the plaintiff saw other planks on the runway nailed to the cross pieces and had a right to suppose that one placed in an especially dangerous position, to wheel a barrow over, was also nailed. It is doubtless true that the simpler the appliance or the condition of the working place, the more probable it is that danger in it, if it exists, will be obvious; but it does not follow, by any means, that the simplicity proves conclusively the obviousness under all circumstances.

We do not think that the declaration failed to state a cause of action, or that the case should have been taken from the jury or that the verdict was against the evidence.

Further, of course, there was the question for the jury whether, even if they believed the defendant negligent and that the plaintiff did not assume the risk of the danger that the negligence produced, that negligence, with its resultant danger, was the proximate cause of the accident. With this is connected the "fellow servant defense" contended for by defendant. He maintains that the condition of the runway

was not the cause of the fall, but the action of Casey in jerking his barrow to get it back on the plank. Casey and the plaintiff were clearly fellow servants, but the jury had properly before them not only the question whether Casey's action were negligent, but also whether if it were, it was the sole proximate cause of the accident, or whether it was necessary to the happening of the accident that negligence in furnishing the runway in its actual condition for the men to walk on, should have concurrently existed. If they found the last proposition to be true, they were justified in finding the defendant guilty, even though they found Casey guilty of concurrent negligence, for the "concurrent negligence" of a third person, without which, notwithstanding the negligence of the defendant, the plaintiff would not have been injured, is no defense. Pullman Palace Car Co. v. Laack, 143 Ill. 242; Wabash, St. L. & P. R. Co. v. Shacklet, 105 Ill. 364; Siegel Cooper & Co. v. Trcka, 218 Ill. 565.

We do not think under the evidence that the jury could be said to be clearly wrong in their finding against the defendant, whether or not they found Casey's act negligent. That act itself was a natural action that might have been expected to happen. We do not think that the evidence even tended to show that had the plank been nailed to the crosspieces, Casey's jerking the wheelbarrow back to it would have caused the accident.

This consideration alone would justify the refusal of instruction numbered nineteen, which refusal is complained of by the defendant. The instruction reads:

"The jury are instructed that for the acts or omissions of John Casey, the defendant is not liable to the plaintiff, and if you believe from the evidence that the acts of John Casey were the sole proximate cause of the injury to the plaintiff, then you must find the defendant not guilty."

We think that applied to the evidence in this record, this instruction would have been misleading.

But another sufficient reason for its refusal is that all that was essential in it was presented to the jury by instructions 8, 9 and 12, given to the jury at the request of defendant. In them they were told what constituted a fellow-servant, and that for an accident caused solely from the act of a fellow-servant, the plaintiff could not recover against the defendant, and that the unnailed condition of the board did not render the defendant liable unless the jury found that such condition was the result of negligence on the part of defendant and that an ordinarily prudent and careful person in the position of the defendant would have anticipated such an accident might probably happen from it.

As the Supreme Court says in Railway Company v. Link, 229 Ill. 190, "When a party asks more than one instruction stating in varying language the same proposition, his complaint that the court refused the one which the party deemed most favorable to his cause, and gave the other, does not deserve extended notice."

Refused instruction 20 is not a correct statement of the law. It needs no discussion.

The jury were, in our opinion, instructed at the request of the defendant quite as favorably as, if not more favorably than, was justifiable.

The damages under the evidence we do not hold to be excessive, and the judgment of the Superior Court is affirmed.

*Affirmed.*