# James Isaac Moore, Appellee, v. The Wabash Railway Company, Appellant.

1. MASTER AND SERVANT, § 133*—*what is duty of master as to place of work.* A master must use reasonable care to furnish his servants with a reasonably safe place for the performance of his work and he is liable for the negligent performance of such duty whether he undertakes its performance personally or through another person; and the question of his exercise of such reasonable care is for the jury.

2. MASTER AND SERVANT, § 133*—*when act of servant is in line of duty.* In removing a box of explosives from along the tracks, a railroad patrolman was performing a duty the defendant railroad owed the freight conductor of a train who was on the caboose of his train in the yards and sustained injury by the explosion of the contents of a box while the same was on the platform where it had been placed by the patrolman; and such patrolman was within the line of his duty in placing the box where he did.

3. MASTER AND SERVANT, § 110*—*when negligence is proximate cause of injury.* In an action by a conductor against a railroad company for injuries sustained through the explosion of the contents of a box which defendant's patrolman had found along the tracks and placed on the platform of the caboose of a train standing in the yards and near where plaintiff was seated, it was not necessary that defendant or its patrolman should have foreseen the exact consequences, and the jury properly found that defendant was guilty of negligence and that such negligence was the proximate cause of plaintiff's injury.

4. MASTER AND SERVANT, § 152*—*when railroad is liable for negligence.* A railroad company was liable for injuries sustained by a freight conductor who, while seated on the steps of the caboose of his train which was standing in the yards, was injured through the explosion of the contents of a box which defendant's patrolman had found along the tracks and placed on the platform of the caboose.

5. MASTER AND SERVANT, § 133*—*what duties of master are nondelegable.* The duty of a master to use due care to furnish a reasonably safe place for his employee to work in is a nondelegable duty of which the master cannot absolve himself by delegating it to another.

6. COMMERCE, § 4*—*what constitutes interstate commerce.* A conductor was engaged in interstate commerce, where he had taken

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a train containing interstate shipments from Springfield to Decatur and was on continuous service until his return to Springfield, and where at the time of the injury in question he was at work about the caboose of a train standing in the yards and had received a call to take a train containing interstate cars to Springfield and was making necessary preparations to do so.

7. LIMITATION OF ACTIONS, § 62*—*what change of parties does not affect action.* Where the pleadings and the sheriff's return were amended, in a personal injury case, by changing the name of Wabash Railroad Company to Wabash Railway Company, and where the sheriff's return by virtue of such amendment showed that defendant was served within 2 years after the injury occurred, the error in name was merely a misnomer of which defendant could have availed itself by plea in abatement, and its failure to do so waived any claim of the statute of limitations.

Appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the April term, 1920. Affirmed. Opinion filed October 27, 1920.

ALLEN, HUMPHREY & CONVERSE, for appellant; N. S. BROWN, of counsel.

T. J. CONDON and ROBERT H. PATTON, for appellee.

MR. PRESIDING JUSTICE WAGGONER delivered the opinion of the court.

Appellee brought an action on the case, under the Federal Employers' Liability Act, against The Wabash Railway Company to recover damages for personal injuries sustained. At the close of appellee's evidence and at the close of all the evidence, the court denied appellant's motion to direct a verdict. The jury returned a verdict of $10,000 for appellee, and a judgment was rendered thereon.

Appellant claims there was no negligence on its part; that if negligence is shown it was not the proximate cause of the injury; that its patrolman, R. A. Thornell, was not acting within the scope of his em-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ployment, and for that reason appellant is not liable for his acts; that appellee assumed the risk; that he was not engaged in interstate commerce; that the cause of action is barred by the statute of limitations and that there was error in the instructions.

Appellee was a freight conductor in the employ of appellant, lived at Springfield, Illinois, and was injured on August 15, 1917, at Decatur, Illinois. On the morning of that day he left Springfield at four thirty-five o'clock, with a train containing interstate commerce cars, arriving at Decatur about seven o'clock in the evening, and was on duty continuously from the time he left Springfield until the accident. After arriving at Decatur he made out his train reports and stayed around the yard office (as he had a right to do), talking to other employees. About eight o'clock a. m. on making inquiry of Stephen O'Connell, an assistant yardmaster, he was told that he would get train number ninety-five at eleven-thirty a. m. out of Decatur, immediately after the arrival of train number ninety-three from Chicago, and that he could take the arrival of the last-named train as his time and call. O'Connell also told him that there were certain cars made up for his train on track number five.

Appellant offered evidence to show that it could not be known at Decatur what conductor would go on a train until called by a train caller whose custom was to call a conductor an hour or an hour and a half before a train left; that up to the time of the injury appellee had not been called; that the same caboose had been used by him for many years and would be used by him regardless of the train he was called for. On the other hand appellee and O'Connell each testified to the custom of calling conductors in the manner appellee was called in this instance and appellee testified he was called two-thirds of the time in that way and that often the caller did not go to the caboose.

Appellee in the discharge of his duty took the numbers of the cars, twelve or fifteen of which were destined to Kansas City, Missouri, and entered them on the train book in his caboose. He also entered, on a form used for that purpose, the names of the brakeman and himself but not that of the engineer or fireman. He had gotten ice for water in the caboose and had caused signals to be placed on the east end of it to indicate that it was going west.

About ten o'clock a. m. when appellee was in the caboose, Thornell, a patrolman in the yards of appellant, called him to come out from the car and see if he knew what it was that he (Thornell) had found. Appellee went out and sat down on the bottom step of one of the steps of the caboose. At that time Thornell had a box in his hand, about the size of a cake of soap, and set it on the sill of the caboose platform. The box contained caps two inches long, about the size of a lead pencil, a number of which Thornell scattered on the platform of the caboose and handed one of them to appellee. There was a white flour-like powder sifting out from it, which appellee testified looked like ammunition of some kind. Thornell had found the box inside of the track near one of the rails and it had apparently been crushed by the flange of a car wheel. The lid was gone and some of the caps were on the ground. Thornell told appellee that he would go back and see if he could find any more. Appellee said, "Here, take these with you, and if you find any more take them to the chief detective's office and see if he can find out what they are," but Thornell went back to look for more leaving the broken box of caps on the caboose platform. While appellee was still sitting on the car step, with a cap in his hand, a brakeman came out, knelt down behind him, and at that instant the caps exploded. Appellee's body was burned; his right eyeball was bursted; his left eyeball was penetrated

by sixteen pieces of copper and he was left blind and a nervous wreck as a result of the explosion.

Negligence has been defined as "the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a prudent and reasonable man would not do." (*Pittsburg, Ft. W. & C. Ry. Co. v. Callaghan*, 157 Ill. 406, 412.) "Negligence is the opposite of care and prudence; it is the omission to use the means reasonably necessary to avoid injury to others, and is not a legal question, but one of fact to be proven like any other question." *Chicago & A. R. Co. v. Pennell*, 94 Ill. 448, 455.

It is well settled that a master must use reasonable care to furnish his servants with a reasonably safe place for the performance of his work; and he is liable for the negligent performance of such duty, whether he undertakes its performance personally, or through another person. *Missouri Malleable Iron Co. v. Dillon*, 206 Ill. 145, 151; *Metcalf Co. v. Nystedt*, 203 Ill. 333, 339; and *Donk Bros. Coal & Coke Co. v. Thil*, 228 Ill. 233, 235-236.

The question of the exercise of reasonable care in providing a reasonably safe place for a servant to work is for a jury. (*Stephen v. Duffy*, 237 Ill. 549, 557; *Milauskis v. Terminal R. Ass'n*, 286 Ill. 547, 557 and *Chicago City Ry. Co. v. Gemmill*, 209 Ill. 638, 640-641.) Negligence is ordinarily a question of fact, and is certainly a question of fact where the evidence as to the material facts is conflicting, or where, in a conceded state of facts, a different conclusion would reasonably be reached by different minds. It only becomes a question of law where, from facts admitted or conclusively proven, there is no reasonable chance of different minds reaching different conclusions. (*Illinois Cent. R. Co. v. Anderson*, 184 Ill. 294, 304.) If

Moore v. The Wabash Railway Co., 219 Ill. App. 574.

there is in the record any evidence from which the jury could "without acting unreasonably in the eye of the law" find that all the material averments of the declaration had been proven, then the cause should be submitted to the jury. (*Libby, McNeill & Libby v. Cook,* 222 Ill. 206, 212.)

We find, from the evidence in the record that it was the duty of appellant's patrolman Thornell to have removed the box of caps found in the railroad yards. In removing the caps the appellant, through its patrolman, was performing a duty it owed appellee and other employees to use reasonable care to furnish its servants a reasonably safe place to work. When Thornell found the caps he did not know that the powder inside of them was fulminate of mercury, the most sensitive and powerful explosive known to science but he did know that they were dynamite caps. Appellee did not know the nature of the caps, but thought they were some kind of government ammunition. We cannot say that an average prudent person, knowing they were dynamite caps, would have acted as Thornell did. The jury from the evidence might as reasonably say that an average prudent person, knowing that the caps were dynamite caps, would have used more care than he did in the premises. The jury as reasonable men might have well found that while Thornell did not know the full nature of the danger from the caps, still he knew enough that an average prudent man would not have exposed appellee to danger under the circumstances disclosed by the record. In any event, we cannot say that there is no evidence fairly tending to prove the allegations of the declaration. Neither can we say that the verdict is manifestly and palpably against the weight of the evidence but on the contrary do find that the preponderance of the evidence sustains the allegations of the declaration and that the jury may well have found, as reasonable men, from the evi-

dence that appellant failed to use reasonable care in furnishing appellee a reasonably safe place to work.

It is not necessary that appellant, or its patrolman, be able to foresee the exact consequences in order to be liable. "Consequences which follow in unbroken sequence, without an intervening cause from the original wrong, are natural; and for such consequences the wrongdoer must be held responsible, even though he could not have foreseen the particular results, provided that by the exercise of ordinary care he might have foreseen that some injury would result from his negligence." It would be very unreasonable to make the liability of appellant depend on the question whether the precise injury complained of and the manner of its occurrence ought to have been foreseen. (*Pullman Palace Car Co. v. Laack,* 143 Ill. 242; *City of Dixon v. Scott,* 181 Ill. 116, 119.) The jury properly found that appellant was guilty of negligence and that such negligence was the proximate cause of appellee's injuries.

The contention that Thornell was not acting within the scope of his employment ignores the duty appellant owed appellee to use reasonable care to furnish him a reasonably safe place to work. This was a nondelegable duty, and appellant could not absolve itself by delegating it to another. (*Donk Bros. Coal & Coke Co. v. Thil,* 228 Ill. 233, 237.) When appellant appointed Thornell to perform this duty it became liable for the manner in which he performed it. There was no excuse or legal reason for Thornell taking the box of caps to the caboose. He knew enough about them that as an average prudent man he should have known that by taking the caps to the caboose he rendered the place dangerous. His act was the direct cause of the injury and appellant thus failed in its duty towards appellee to use reasonable care to furnish him a reasonably safe place to work.

The doctrine of assumed risk is that the servant as-

sumes the risks necessarily incidental to the employment. (*Illinois Terminal R. Co. v. Thompson*, 210 Ill. 226, 237.) This was clearly not such a risk. The doctrine of assumed risk does not relieve appellant of its duty to use reasonable care to furnish appellee a reasonably safe place to work. (*McCarthy v. Spring Valley Coal Co.*, 149 Ill. App. 275, 279.) Assumed risk and contributory negligence are entirely different things in law, although both may arise under the facts in the same case. (*Cleveland, C., C. & St. L. Ry. Co. v. Curtis*, 134 Ill. App. 565, 567.) Contributory negligence is no bar in this case by virtue of the provisions of section three of the Federal Employers' Liability Act. It could only be considered in diminishing damages and not as a bar to the action.

It is contended that appellee was not engaged in interstate commerce. He had taken a train from Springfield to Decatur that contained cars in interstate shipments and was on continuous service until his return to Springfield. At the time in question he was at work in the caboose and had just finished a report of the outgoing trip to be given to the proper official at Springfield. He had received a call, in the manner that calls were given him two-thirds of the time, to take a train containing interstate cars to Springfield and was making necessary preparations to do so. Under these facts he was clearly engaged in interstate commerce. *North Carolina R. Co. v. Zachary*, 232 U. S. 248; *Peery v. Illinois Cent. R. Co.*, 123 Minn. 264.

This suit was brought against The Wabash Railroad Company. Summons was served August 13, 1919. On August 27, 1919, leave was given appellee to amend the *præcipe*, summons and declaration, and to the sheriff to amend his return, by changing the defendant's name to The Wabash Railway Company, and the same was done. The sheriff's return by virtue of such amendment now shows appellant was served with summons on August 13, 1919, which was within two years after

the injury occurred. If appellant desired to claim it had been sued by a wrong name, it should have filed a plea in abatement (*Pennsylvania Co. v. Sloan*, 125 Ill. 72, 77), and therefore cannot successfully claim a bar of the statute of limitations. The error was a mere misnomer and was properly corrected by amendments.

The questions raised in reference to instructions in the case are no different in principle than the questions above passed upon, and for similar reasons we hold there was no error in the instructions.

The judgment rendered in the circuit court is affirmed.

*Judgment affirmed.*